IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| COLUMBUS REGIONAL HOSPITAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, | ) |
| | ) |
| Defendant. | ) |

_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.  Plaintiff, Columbus Regional Hospital (Columbus), brings this action to compel the Federal Emergency Management Agency (FEMA) to release records withheld in violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

2.  FEMA is violating FOIA by failing to produce (or lawfully withhold) records in accordance with FOIA's statutorily prescribed time limits.

3.  Columbus respectfully requests that the Court order FEMA to immediately produce all responsive agency records that FEMA has unlawfully withheld from Columbus.

### PARTIES

4.  Columbus, a unit of Bartholomew County, Indiana, is a county hospital that provides health care services to patients within a ten-county region in southeastern Indiana.

5.  FEMA is a federal agency as defined in 5 U.S.C. §§ 551(1) and 552(f)(1).

### JURISDICTION AND VENUE

6.  This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.  Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

8.  On April 10, 2014, FEMA unlawfully recovered approximately $9,600,000 in disaster assistance funds from Columbus.

9.  Columbus filed two timely administrative appeals of FEMA's unlawful action.

10. FEMA denied Columbus's first appeal on December 20, 2016.

11. FEMA denied Columbus's second appeal on December 27, 2017.

12. During the course of Columbus's two administrative appeals, FEMA refused to provide Columbus with complete copies of the administrative record documents that FEMA relied upon to deny the appeals.

13. Columbus needs these documents to fully understand the rationale behind FEMA's appeal denials.

14. Accordingly, on February 22, 2018, Columbus submitted a FOIA request to FEMA seeking copies of the administrative record documents that FEMA relied upon to deny Columbus's two appeals.  *See* Ex. 1, Feb. 22, 2018, FOIA Request, at A1-2.

15. Specifically, Columbus's FOIA request sought the following:

   a.  A complete copy of the administrative record that FEMA considered when FEMA denied Columbus's first appeal.

   b.  A complete copy of the administrative record that FEMA considered when FEMA denied Columbus's second appeal.

*Id.* at A1.

16. In addition, Columbus's February 22, 2018, FOIA request sought copies of any grant agreements, cooperative agreements, contracts, or other agreements related to disaster assistance that FEMA entered into with Columbus.  *Id.*

17. Columbus agreed to pay FEMA at least $600 to comply with the FOIA request.  *Id.*

18. On February 27, 2018, FEMA informed Columbus that it would not meet FOIA's 20-day

deadline to produce responsive records.  *See* Ex. 2, FEMA Feb. 27, 2018, Letter, at A22-23.

19. Specifically, FEMA provided, in part, as follows:

> The increasing number of FOIA requests received by this office
> may cause some delay in processing your request. Consistent with
> 6 Code of Federal Regulations § 5.5(a) of the DHS FOIA
> regulations, the Department processes FOIA requests according to
> their order of receipt.  Although DHS' goal is to respond within 20
> business days of receipt of your request, FOIA does permit a 10-
> day extension of this time period in certain circumstances.  <u>As your
> request seeks a voluminous amount of separate and distinct
> records, DHS will invoke a 10-day extension for your request
> pursuant to 5 U.S.C. § 552(a)(6)(B).</u>   If you would like to narrow
> the scope of your request, please contact our office. We will make
> every effort to comply with your request in a timely manner. . . .
>
> We have queried the appropriate FEMA organizations for
> responsive records.  If any responsive records are located, they will
> be reviewed for determination of releasability.  Please be assured
> that one of the processors in our office will respond to your request
> as expeditiously as possible.  We appreciate your patience as we
> proceed with your request.

*Id.* (emphasis added).

20. Contrary to FEMA's assertion, Columbus's FOIA request did not seek "a voluminous

amount of separate and distinct records."

21. Rather, Columbus sought two existing administrative records and copies of disaster

assistance agreements between Columbus and FEMA.

22. FEMA's February 27, 2018, letter is the only information that Columbus has received

from FEMA about the FOIA request.

23. Accordingly, on August 10, 2018, Columbus sent FEMA a letter explaining that

Columbus intended to enforce its rights under FOIA if FEMA did not respond to the FOIA

request within 10 days.  *See* Ex. 3, Columbus's Aug. 10, 2018, Letter, at A24-25.

3

24. FEMA has not responded to Columbus's August 10, 2018, letter.

25. To date, FEMA has not informed Columbus (i) whether FEMA has responsive documents, (ii) when FEMA will release responsive documents; or (iii) FEMA's rationale for withholding any responsive documents.

## COUNT I
### (Failure to Respond Within FOIA's 20-Day Statutory Deadline)

26. Columbus realleges and incorporates by reference all of the allegations in paragraphs 1-25 as if fully set forth herein.

27. Upon receiving a FOIA request, an agency must determine within 20 business days "whether to comply with such request" and must "immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination."  5 U.S.C. § 552(a)(6)(A)(i).

28. FEMA violated section 552(a)(6)(A)(i) of FOIA by failing to determine within 20 business days whether to disclose responsive documents and failing to immediately notify Columbus about the rationale for its determination.

## COUNT II
### (Failure to Make Responsive Non-Exempt Records Promptly Available)

29. Columbus realleges and incorporates by reference all of the allegations in paragraphs 1-28 as if fully set forth herein.

30. FOIA requires that upon receiving a request for records that "reasonably describes" the records sought and complies with "published rules … and procedures to be followed," FEMA "shall make the records promptly available to any person."  *See* 5 U.S.C. § 552(a)(3)(A).

31. Columbus's FOIA request reasonably described the records sought and complied with FEMA's published rules and procedures.

32. Therefore, FEMA's failure to promptly make available non-exempt records responsive to Columbus's FOIA request violates section 552(a)(3)(A) of FOIA.

**PRAYER FOR RELIEF**

WHEREFORE, Columbus respectfully requests that this Court award the following relief:

(A) Declare that FEMA unlawfully failed to respond to Columbus's February 22, 2018, FOIA request;

(B) Order FEMA to (i) determine whether it has documents responsive to Columbus's request and (ii) produce all responsive documents at no cost to Columbus within 10 days of such order;

(C) Order FEMA to produce a *Vaughn* index of any responsive records withheld under a claim of exemption;

(D) Award Columbus its litigation costs, including reasonable attorney fees; and

(E) Grant Columbus such further and additional relief as the Court deems just and proper.

Respectfully submitted

s/ Derek R. Molter
DEREK R. MOLTER (D.C. Bar No. 984962)
Ice Miller
One American Square
Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2193
Facsimile: (317) 592-4897
Email: derek.molter@icemiller.com

s/ Joshua D. Schnell
JOSHUA D. SCHNELL* (D.C. Bar No. 493409)
Ice Miller LLP
20 F St. NW
Suite 850
Washington, DC 20001

Telephone: (202) 572-1603
Facsimile: (202) 572-1604
Email: joshua.schnell@icemiller.com

*Application for admission pending; *pro hac vice*
  motion to be filed

August 29, 2018                    *Counsel for Plaintiff*

# EXHIBIT 1



LEGAL COUNSEL

20 F Street N.W. | Suite 850 | Washington, DC 20001

Chicago   Cleveland   Columbus   DuPage County, Ill.
Indianapolis   New York   Philadelphia   Washington, D.C.

February 22, 2018

WRITER'S DIRECT NUMBER: (202) 572-1603
DIRECT FAX: (202) 572-1604
EMAIL: Joshua.Schnell@icemiller.com

**FOIA REQUEST**

_Via Email_

FEMA Information Management Division
500 C Street, S.W.
Washington, D.C. 20472
fema-foia@fema.dhs.gov

> **RE:    FOIA Request for Records Related to Columbus Regional Hospital's Two Administrative Appeals (PA ID 005-UOFZF-00)**

Dear Freedom of Information Act Officer:

I write to request records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and applicable Department of Homeland Security regulations at 6 C.F.R. §§ 5.1 to 5.13.

I.    Description of Records Sought

Please produce the following records:

(1)    A complete copy of the administrative record the Federal Emergency Management Agency (FEMA) considered when FEMA denied Columbus Regional Hospital's second appeal related to allegedly improper costs. (_See_ attached December 27, 2017, Second Appeal Denial).

(2)    A complete copy of the administrative record FEMA considered when FEMA denied Columbus Regional Hospital's first appeal related to allegedly improper costs. (_See_ attached December 20, 2016, First Appeal Denial).

(3)    Copies of any grant agreements, cooperative agreements, contracts, or other agreements related to disaster assistance that were entered into by FEMA and Columbus Regional Hospital.

II.    Willingness to Pay Fees

I am willing to pay fees for this request up to $600.  Please contact me as soon as possible if you estimate that FEMA's fees will exceed this limit.

Freedom of Information Officer
FEMA
February 22, 2018
Page 2

III.     FOIA Exemptions

If you decide to invoke any FOIA exemptions in response to this request, please include sufficient information for me to assess the basis for each asserted exemption. For example, if FEMA withholds any administrative record documents (or portions of a document) under FOIA exemption 5, please identify FEMA's legal authority for asserting privilege over a document that is part of an administrative record. This information will help me decide whether to appeal an adverse determination.

IV.     Conclusion

Thank you for your attention to this FOIA request. If possible, please email the requested records to me at joshua.schnell@icemiller.com. If email is not possible, you may mail the records to me at the following address:

> Joshua Schnell
> Ice Miller LLP
> 20 F St. N.W.
> Suite 850
> Washington, D.C. 20001

Please do not hesitate to call or email me to clarify the request or otherwise expedite and simplify your efforts to comply.

Best regards,

ICE MILLER LLP

Joshua Schnell

APPENDIX TABLE OF CONTENTS

December 20, 2016, First Appeal Denial…………………………………………………A-001

December 27, 2017, Second Appeal Denial…………………………………………………A-007



**U.S. Department of Homeland Security**
Region V
536 S. Clark St., 6th Floor
Chicago, IL 60605-1509

December 20, 2016

Mr. David Kane, Director                Mr. Brent W. Huber, Ice Miller LLP
Indiana Dept. of Homeland Security      Columbus Regional Hospital
Indiana Government Center South         One American Square Suite 2900
302 W. Washington Street – Room E-208   Indianapolis, IN  46282
Indianapolis, IN  46204-4701

Re:    First Appeal Determination – Columbus Regional Hospital, PA ID 005-UOFZF-00
       FEMA-1766-DR-IN, PWs 1530, 1904, 2013, 2014, 2184, 2206, 2210, 2374, 2066, 2073,
       2348, and 2373 – Hospital Restoration and Sec. 406 Hazard Mitigation

Dear Mr. Kane and Mr. Huber:

FEMA Region V has conducted an initial review of the first appeal submitted by Indiana
Department of Homeland Security (Grantee) on June 9, 2014 on behalf of Columbus Regional
Hospital (Subgrantee). The Subgrantee is appealing the U.S. Department of Homeland
Security's Federal Emergency Management Agency's (FEMA) denial of costs in the amount of
$9,612,831.19 incurred by means of improperly procured contracts for restoration of the hospital
basement and first floor as well as hazard mitigation measures.

As explained in the enclosed analysis, the OIG Audit found Federal procurement requirements
were not followed and improper "cost plus a percentage of cost" contracts were used. The OIG
and FEMA determined the costs associated with these federal procurement violations, in the
amount of $9,612,831.19 ($7,285,317.20 federal share), are not eligible. Accordingly, this
appeal is denied.

The Subgrantee may appeal this determination to the Assistant Administrator, Recovery
Directorate, at FEMA Headquarters pursuant to 44 C.F.R., § 206.206, **Appeals**. If the
Subgrantee elects to file such a second appeal, the appeal must: 1) contain documented
justification supporting the Subgrantee's position, 2) specify the monetary figure in dispute, and
3) cite the provisions in federal law, regulation, or policy with which the Subgrantee believes the
initial action was inconsistent. A second appeal must be submitted to the Grantee, by the
Subgrantee, within 60 days of the Subgrantee's receipt of this letter. The Grantee's transmittal
of that appeal, with recommendation, is due to the FEMA Region V office within 60 days of
receipt of the Subgrantee's letter. This office will transmit the second appeal to FEMA
Headquarters.

Sincerely,

Janet M. Odeshoo
Acting Regional Administrator

**FIRST APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,**
**and 2206, Hospital Restoration and Hazard Mitigation, 705**

## Background

The State of Indiana experienced severe storms and flooding from May 30, 2008 to June 27, 2008. A Major Disaster was declared by the President on June 8, 2008 (FEMA-1766-DR-IN), making available disaster aid to supplement state and local recovery efforts in affected areas. Bartholomew County was one of the declared counties.[1] Within a few days of the declaration, the Governor of Indiana and the Regional Administrator for FEMA Region V executed the FEMA-State Agreement, which sets forth the understandings, commitments, and conditions under which FEMA provides disaster assistance.

Columbus Regional Hospital (CRH) (Subgrantee) is a county non-profit hospital located in the City of Columbus, which is the County seat of Bartholomew County, Indiana. CRH is a 225-bed facility that provides emergency and surgical services and comprehensive care in numerous specialty areas.

On June 7, 2008, flash flood waters severely damaged the hospital. The basement, which contained much of the hospital's medical and lab equipment, and central utility plant were inundated with contaminated water from floor to ceiling. All of the contents and equipment in the basement were damaged or destroyed. The first floor was also inundated with up to 18 inches of flood water. CRH pumped the flood waters from the building between June 7, 2008 to June 9, 2008, leaving behind mud and silt. CRH procured a number of contractors to clean-up, repair, and remediate the hospital. CRH officials closed the facility and partially reopened in October 2008. CRH did not return to full capability until the end of April 2009.

On June 30, 2008, the Subgrantee submitted a Request for Public Assistance[2] form to FEMA to apply for funding to supplement the hospital's recovery efforts. FEMA personnel developed hundreds of Project Worksheets (PWs) to document all of the projects needed to clean-up, repair, and remediate the hospital.[3] The total award amount for these PWs was $74.7 million.

Early on in the PW development process, FEMA expressed concern about the Subgrantee's procurement actions and informed CRH that procurement needed to comply with applicable Federal grant procurement requirements.[4] The Case Management Detail Report[5] prepared by

---

[1] President Declares Major Disaster for Indiana, Release Number: HQ-08-094 (June 9, 2008), http://www.fema.gov/news-release/2008/06/09/president-declares-major-disaster-indiana
[2] The Request for Public Assistance (RPA) is the official application for FEMA's disaster assistance. The RPA starts the grant process and opens the case management file, which contains general claim information as well as records of meetings, conversations, phone messages, and any special issues or concerns that may affect funding.
[3] Fact Sheet: 9580.5, *Elements of a Project Worksheet* (2008) ("The PW is the primary form used to document the project and includes the location, damage description and dimensions, scope of work, and cost estimate for each project.")
[4] Letter from David Smith, Field Attorney, FEMA Office of Chief Counsel, to Brent Huber, Legal Counsel, Ice Miller LLP (Sept. 26, 2008) and Email from David Smith, Regional Counsel, FEMA Region X, to Amanda Ratliff, PA Branch Chief, FEMA Region V (Dec. 17, 2014).
[5] Beverley Frieday, Case Management Detail Report, Disaster #1766, (Apr. 28, 2009).

1

**FIRST APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,**
**and 2206, Hospital Restoration and Hazard Mitigation, 705**

non-competitive contracts for non-exigent work, another two were prohibited cost-plus-percentage-of-costs contracts for exigent work, and all nine contracts involved violations of other Federal procurement standards.  The OIG found that CRH violated six Federal grant procurement requirements:

1. Perform procurement transactions in a manner to provide, to the maximum extent practical, open and free competition.  (2 C.F.R. § 215.43)
2. Do not use the prohibited cost-plus-a-percentage-of-cost method of contracting.  (2 C.F.R. § 215.44(c))
3. Include required provisions in all of their contracts.  (2 C.F.R. § 215.48 and Appendix A to Part 215 – Contract Provisions)
4. Make positive efforts to use small businesses, minority-owned firms, and women's business enterprises, whenever possible.  (2 C.F.R. § 215.44(b))
5. Prepare and document some form of cost or price analysis in connection with every procurement action.  (2 C.F.R. § 215.45)
6. Provide a clear and accurate description of the project requirements for the material, product, or service to be procured.  (2 C.F.R. § 215.44(a)(3)(i))

The following chart shows which requirement each procurement action violated.

| Contract Amount ($) | Questioned Amount ($) | Contractor | PWs | Contract Scope of Work | Procurement Standards 1-6 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 1 | 2 | 3 | 4 | 5 | 6 |
| 5,114,305 | 5,114,305 | Rollins | 2066 | Flood Wall | X | | X | X | | |
| 3,584,720 | 3,584,720 | Ernst & Young | 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210, and 2206 | Project Administration | X | | X | X | | X |
| 38,916,492 | 1,675,802 | McCarthy | 2066 | Restoration Work | | X | X | X | | |
| 5,808,528 | 557,154 | Paul Davis | 1540 and 2014 | 1st Floor Clean-up | | X | X | X | X | |
| 3,898,889 | 47,959.87 | BMS-CAT[11] | 1904 and 2013 | Basement Clean-up | | X | X | X | X | |
| Totals: | | | | | | | | | | |
| 64,791,798 | 10,979,941 | | | | | | | | | |

---

[11] The information for BMS-CAT was added to the chart upon further review by Region V, which discovered that the contract included several cost-plus-a-percentage-of-cost provisions that were not discussed in the audit report. By adding this amount to the questioned costs, the OIG recommended deobligation of $10,931,981 becomes $10,979,941.

3

**FIRST APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,**
**and 2206, Hospital Restoration and Hazard Mitigation, 705**

     3) CRH relied on statements made by FEMA staff that following procurement policies
        required by accreditation would not be an issue.

On June 17, 2014, FEMA Region V informed the OIG that the Corrective Action Plan was
implemented. The memorandum noted that the region deobligated $9,612,831.19
($7,285,317.20 Federal share), as ineligible costs.[14] This amount was arrived at in collaboration
with OIG staff.

On April 2, 2015, the FEMA Region V Regional Administrator sent a notification to the Grantee
and the Subgrantee that adjudication of the appeal would be delayed.[15] All appeals with the
potential applicability of Section 705 of the Robert T. Stafford Disaster Relief and Emergency
Assistance Act were put on hold until they could be reviewed by a multi-Directorate group at
FEMA Headquarters (HQ) with expertise in the matter. Within 90 days of receipt of the
guidance from the multi-Directorate group, FEMA Region V would notify the Grantee and
Subgrantee of the disposition of the appeal.

On March 31, 2016, FEMA issued Recovery Policy 205-081-2, Stafford Act Section 705,
*Disaster Grant Closeout Procedures*.[16] The policy clarifies FEMA's requirements under Section
705 of the Stafford Act, and establishes the guidelines to determine whether Section 705
prohibits FEMA from recovering payments made under the PA program.

FEMA Region V sent a final Request for Information (RFI) to the Grantee and Subgrantee on
August 8, 2016, giving the Subgrantee a final opportunity to add any documentation to the
Administrative Record.[17] The Subgrantee's legal counsel responded to the final RFI request in a
letter dated September 7, 2016, and included several more documents to be added to the
Administrative Record.[18] CRH reasserted its appeal arguments.

---

[14] FEMA adjusted the deobligation amount, after the original OIG recommendation, upon discovery of a calculation error.
[15] Letter from Andrew Velasquez III, Regional Administrator, FEMA Region V, to Arvin Copeland, Director, Indiana Department of Homeland Security, and Marlene Weatherwax, Administrator, Columbus Regional Hospital (April 2, 2015).
[16] Recovery Policy FP 205-081-2, *Disaster Grant Closeout Procedures* (Mar. 31, 2016).
[17] Letter from Andrew Velasquez III, Regional Administrator, FEMA Region V, to Arvin Copeland, Director, Indiana Department of Homeland Security, and Marlene Weatherwax, Administrator, Columbus Regional Hospital (August 8, 2016).
[18] Letter from Brent Huber, Legal Counsel, Ice Miller LLP, to Carmen Goodman, Public Assistance Program Director of Indiana Department of Homeland Security, Amanda Ratliff, FEMA Region V, and Arvin Copland, Director of the Indiana Government Center South (Sept 7, 2016).

5

### FIRST APPEAL ANALYSIS
### FEMA-1766-DR-IN
### Columbus Regional Hospital, PA ID 005-UOFZF-00
### Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210, and 2206, Hospital Restoration and Hazard Mitigation, 705

accurate a picture as if the analysis had been done at the time of the procurement and the project work.

Additionally, Federal rules in awarding contracts prohibit cost-plus-a-percentage-of-cost contracts and require full and open competition to lessen the risk of fraud, waste, and abuse. Congress intended for work funded with Federal dollars to provide opportunities for disadvantaged firms, such as minority firms and women's business enterprises.[22] FEMA has a fiduciary duty to taxpayers to hold Federal grant recipients accountable for noncompliance with the Federal procurement requirements, and to establish disincentives for noncompliance. While the work performed may have helped the hospital recover from the disaster, the hospital's recovery was not the only intended purpose of the Federal grant. By circumventing Federal procurement requirements, CRH did not accomplish the purpose of the grant, which includes complying with federal laws and regulations.

FEMA does not dispute that CRH qualifies as a unit of local government. However, it is first and foremost a hospital, and OMB Circular A-110 applies to all hospitals – both public and private. OMB Circular A-110 was codified, at the time, at 2 C.F.R. Part 215. While CRH has argued that A-110 does not apply to units of local government, CRH has overlooked the fact that A-110 applies to institutions of higher education, hospitals, and other non-profit organizations. There is no specification for any of those organizations that being run by a unit of local government exempts them from following Federal grant requirements. As such, CRH is bound by the requirements of the circular.

***FEMA May Deobligate Awards Wholly and in Part; FEMA Has Looked At All Information and Has Not Considered CRH's Financial Status***

CRH argues that de-obligation of funds because of procurement violations is improper because neither the Stafford Act, nor any related regulations, mandate de-obligation for procurement violations. This argument ignores OMB Circular A-110. FEMA has multiple options to remedy non-compliance with Federal procurement regulations, one of which is to wholly or partially terminate the award.[23] FEMA has discretionary enforcement authority with regard to procurement requirements that it exercises on a case-by-case basis.[24] In this case, the cost analysis, while provided well after the fact, is insufficient for FEMA to determine that the costs, at the time, were reasonable.

---

[22] Office of the Inspector General, IOG-16-126-D, *FEMA Can Do More to Improve Public Assistance Grantees' and Subgrantees' Compliance with Federal Procurement Rules*, at 2 (Sep. 2, 2016). https://www.oig.dhs.gov/assets/GrantReports/2016/OIG-16-126-D-Sep16.pdf
[23] 2 C.F.R. § 215.61 and §215.62. "If a recipient materially fails to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application or notice of award, the Federal awarding agency may . . . [d]isallow . . . all or part of the costs of the activity or action not in compliance."
[24] 2 C.F.R. § 215.4. *See also*, FEMA Second Appeal Analysis, *City of Nome*, FEMA-4050-DR-AK, at 4 (Sep. 28, 2016) https://www.fema.gov/appeal/293098?appeal_page=analysis

7

## FIRST APPEAL ANALYSIS
### FEMA-1766-DR-IN
### Columbus Regional Hospital, PA ID 005-UOFZF-00
### Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210, and 2206, Hospital Restoration and Hazard Mitigation, 705

be no issues of procurement to overcome at a later date."[27]  Unfortunately, CRH incorrectly summarizes, mischaracterizes, and reinterprets the FCO's statements.

A letter from CRH to FEMA, dated January 27, 2009, and meeting notes from the September 25, 2008 meeting provide context to the meeting and demonstrate that the FCO did not agree to exempt CRH from compliance with Federal grant procurement requirements.  The discussion was actually about the standards of accreditation that must be met by CRH, being a critical medical facility in the State of Indiana.  According to CRH, the Healthcare Facilities Accreditation Program (HFAP) has a requirement that critical medical facilities maintain a Medical Equipment Management program for hospital equipment.  The Medical Equipment Management program restricts the acquisition of medical equipment to purchase from certified vendors.  If CRH was to purchase equipment from non-certified vendors, CRH could have its critical medical facility certification revoked.  According to the January 27, 2009 letter, CRH wrote that the FCO stated that as long as CRH purchased replacement equipment in accordance with the accredited Medical Equipment Management program, the purchase costs for the replaced equipment would not be an issue for FEMA.

The case cited by CRH does not support an argument of detrimental reliance.  CRH infers in its first appeal letters that it detrimentally relied upon misleading or incorrect statements made by the FCO by citing to *McWaters v. FEMA*, 408 F.Supp. 2d 221 (E.D. La 2005) as holding that "FEMA is responsible for any costs incurred by a party based on reliance of any incorrect and misleading statements of FEMA's field representatives."  CRH incorrectly summarizes and misapplies the *McWater* case to this appeal.  The Seventh Circuit held that "[n]o field employee can commit the agency to pay more than the statute and regulations require."[28]  More specifically, the Seventh Circuit found that CRH would buy new equipment "no matter what FEMA did or said."[29]  Thus, the Seventh Circuit declined to find CRH detrimentally relied on FEMA statements.

Furthermore, the *McWater* case actually involves whether the "discretionary function exception" applied to actions taken by FEMA in the aftermath of Hurricane Katrina.[30]  The exception, however, does not apply when a Federal statute, regulation, or policy specifically prescribes a

---

[27] Letter from Brent Huber, Ice Miller, to Andrew Velasquez III, Reg'l Adm'r., Fed. Emergency Mgn't Agency (June 6, 2014), 18.

[28] *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 899 (7th Cir. 2013) (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990)) (FEMA cannot be "estopped without detrimental reliance."). http://media.ca7.uscourts.gov/cgi-bin/rssExec.pl?Submit=Display&Path=Y2013/D02-20/C:12-2007:J:Easterbrook:aut:T:fnOp:N:1086073:S:0

[29] *Id.*

[30] *McWaters v. FEMA*, 408 F. Supp. 2d 221, 235 (E.D. La. 2005) (The court found that: 1) there is no mandatory provision of law that requires FEMA to notify all applicants that the Shared Household Rule would no longer be enforced; 2) there is no mandatory provision of law that requires FEMA to notify all applicants that certain restrictions on rent assistance funds were waived; 3) FEMA violated a statutory duty by failing to articulate to applicants that SBA loan applications are not required to receive Temporary Housing Assistance; and 4) FEMA violated a statutory duty by taking actions that discriminated economically disadvantaged applicants.)

9

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

DEC 2 7 2017

 **FEMA**

Bryan Langley
Director
Indiana Department of Homeland Security
302 West Washington Street, Room E-208
Indianapolis, Indiana 46204

Re: Second Appeal – Columbus Regional Hospital, PA ID 005-UOFZF-00, FEMA-1766-DR-IN,
Multiple Project Worksheets – OIG Audit, Procurement, 705(c)

Dear Mr. Langley:

This is in response to a letter from your office dated March 7, 2017, which transmitted the
referenced second appeal on behalf of Columbus Regional Hospital (Applicant). The Applicant
is appealing the Department of Homeland Security's (DHS) Federal Emergency Management
Agency's (FEMA) deobligation of $9,612,831.19 for violations of Federal procurement
requirements found in Title 2 of the Code of Federal Regulation (C.F.R.) Part 215 following a
DHS Office of Inspector General audit.

As explained in the enclosed analysis, I have determined that Acting Regional Administrator of
FEMA Region V acted within her authority pursuant to 2 C.F.R. §§ 215.61 and 215.62 in
deobligating costs associated with procurement violations. In addition, Stafford Act § 705(c)
does not apply when procurement violations occur, as is the case here, because the purpose of the
grant is not accomplished. Therefore, I am denying this appeal.

Please inform the Applicant of my decision. This determination is the Agency's final decision
on this matter pursuant to 44 C.F.R. § 206.206, **Appeals**.

Sincerely,

Alex Amparo
Assistant Administrator
Recovery Directorate

Enclosure

cc: James K. Joseph
    Regional Administrator
    FEMA Region V

**SECOND APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, 2348, 2373**
**and 2374 – OIG Audit, Procurement, 705(c)**

## Background

From May 30 to June 27, 2008, the State of Indiana experienced severe storms and flooding which caused damage to Columbus Regional Hospital's (Applicant) medical facility. The Applicant procured contract labor to address emergency and permanent work required as a result of the disaster. Specifically, the Applicant procured Rollins Construction Company to build a flood wall, Ernst & Young, LLP to complete administrative services associated with the grant, McCarthy Building Companies to perform restoration work, and Paul Davis Restoration, Inc. to clean up the first floor of the hospital. FEMA prepared various Project Worksheets (PWs), including PWs 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, and 2348 reflecting such disaster work.

In 2013, the Department of Homeland Security's (DHS) Office of Inspector General (OIG) issued Audit Report OIG-14-12-D, *FEMA Should Recover $10.9 Million of Improper Contracting Costs from Grant Funds Awarded to Columbus Regional Hospital, Columbus, Indiana*, after its investigation demonstrated that the Applicant committed several procurement violations pursuant to Title 2 of the Code of Federal Regulation (C.F.R.) §§ 215.43, 215.44, 215.45 and 215.48. The OIG ultimately recommended that FEMA deobligate a total of $10,931,981.00 from various PWs.[1] FEMA Region V initially concurred with the OIG's recommendation and deobligated the full recommended amount, but later adjusted the deobligated amount to $9,612,831.19[2] upon discovery of a calculation error. Additionally, Region V conducted its own review of the PWs related to one of the contracts questioned by the OIG and deobligated additional funding as captured in PWs 2373 and 2374.[3]

*First Appeal*

On June 6, 2014, the Applicant appealed FEMA's determination to disallow funding, as recommended by the OIG, due to procurement violations. The Applicant accused the OIG of not conducting its audit in compliance with the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act) § 705 and FEMA's closeout procedures by "focusing on procurement violations and other factors that are irrelevant in a Stafford Act audit of a governmental unit."[4] The Applicant further asserted that, even if Stafford Act § 705 did not exist, there was no basis for deobligating all of its aid, only the amount FEMA deemed unreasonable. Additionally, the Applicant stated that FEMA's determination should consider its

---

[1] U.S. DEP'T OF HOMELAND SEC. OFFICE OF INSPECTOR GEN. (OIG), OIG-14-12-D, FEMA SHOULD RECOVER $10.9 MILLION OF IMPROPER CONTRACTING COSTS FROM GRANT FUNDS AWARDED TO COLUMBUS REGIONAL HOSPITAL, COLUMBUS, INDIANA, at 9 (2013).

[2] Independently, FEMA deobligated the following amounts from each project worksheet (PW): PW 2184 -$26,143; PW 2013 -$112,619; PW 2066 -$7,710,091; PW 2014 -$244,043; PW 1904 -$26,013; PW 2348 -$21,635; PW 2210 -$4,573; PW 2206 -$1,634; PW 1530 -$473,219; PW 2073 -$35,909; PW 2373 -$951,258; and PW 2374 -$5,393.

[3] FEMA Region V reviewed all of the PWs that included costs claimed under the Ernst & Young contract for administrative services. In doing so, the Region found an additional $956,952.19 ineligible for Public Assistance (PA) reimbursement and prepared PWs 2373 and 2374 to specifically address the additional deobligation.

[4] Letter from Counsel, Ice Miller Legal Counsel, to Reg'l Adm'r, FEMA Region V, at 2 (June 6, 2014).

consultant's cost analysis, the OIG's miscalculations concerning the costs at issue, and exigent circumstances, but not the financial status of the hospital. Finally, the Applicant argued that it was not bound by the procurement rules and regulations cited by the OIG because it is a hospital and a governmental unit.

On August 8, 2016, FEMA Region V sent a Final Request for Information (RFI) to the Applicant identifying outstanding concerns that the Applicant had not complied with Federal procurement requirements. Region V requested that the Applicant demonstrate it was exempt from complying with 2 C.F.R. Pt. 215 and OMB Circular A-110, *Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Nonprofit Organizations*. The Region also provided information regarding the development of FEMA Recovery Policy FP 205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures*, and stated that Section 705(c) did not apply because the Applicant, by failing to comply with post-award terms and conditions, did not accomplish the purpose of the grant. Region V requested that the Applicant provide any additional information within 30 days of receipt of the Final RFI.

The Applicant responded to FEMA's Final RFI on September 7, 2016, clarifying several of its arguments. First, the Applicant stated that the Administrative Record was unclear and that it could not determine what documents were missing in order to supplement it. The Applicant also stated that the Administrative Record included many documents it was not privy to, including the FP 205-081-2 policy. Further, the Applicant argued that FEMA erred in deobligating funds because the costs were reasonable and neither the Stafford Act nor regulation mandates such action. The Applicant also argued that deobligation was improper under the plain meaning of Stafford Act § 705(c) which "serves as a statutory barrier to FEMA's ability to deobligate funds."[5] Specifically, the Applicant asserted that FEMA's reliance on FP 205-081-2 in determining that the purpose of the grant was not accomplished, and thus, that all three elements of Section 705(c) were not met, was improper because the policy was issued after the disaster date. The Applicant went on to say, "[s]trict compliance with procurement regulations might provide an incidental benefit from the grant, but cannot be said to be the 'purpose' of the grant…."[6] Finally, the Applicant asserted that nothing in the FEMA-State Agreement requires strict compliance with every regulation that might potentially apply to grant administration.

On December 20, 2016, the FEMA Region V Acting Regional Administrator (RA) denied the first appeal for multiple reasons. First, the RA found that the Applicant did not follow federal procurement requirements when it used costs plus a percentage of cost (CPPC) contracts to repair its hospital. Next, the RA noted that the Applicant—as a hospital—was required to follow OMB A-110, *Uniform Administrative Requirements for Grants and Agreements With Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations*, when procuring contracts for projects obligated under the Public Assistance (PA) program. Finally, the RA determined that Stafford Act § 705(c), as implemented by FP 205-081-2, *Disaster Grant Closeout Procedures*, did not apply, and FEMA was not prohibited from deobligating funding because the

---

[5] Letter from Counsel, Ice Miller Legal Counsel, to Pub. Assistance Program Dir., IN Dep't of Homeland Sec. and Pub. Assistance Branch Chief, FEMA Region V, at 4 (Sep. 7, 2016).
[6] *Id.* at 5.

A-009

Applicant materially failed to comply with the terms of the grant in securing contracts that violated Federal procurement regulations.

*Second Appeal*

In its second appeal, dated February 16, 2017, the Applicant states that FEMA Region V erred in calculating the costs at issue and did not consider exigent circumstances and other factors surrounding its contracting decisions. Additionally, the Applicant argues that the costs are reasonable, and Region V should have considered its consultant's cost/price analysis performed after it entered in to the contracts. Finally, the Applicant asserts that CPPC contracts are the same as time and materials contracts—for which FEMA has allowed reasonable costs in past instances.

The main focus of the appeal is that FEMA is prohibited from deobligating funding by Stafford Act § 705(c) because all three prongs of the subsection are satisfied. The Applicant additionally argues that deobligation was improper under the plain reading of the language of Section 705(c) because the statute is clear and FEMA did not originally contest the issue of whether payment was authorized pursuant to an approved agreement specifying costs or whether the purpose of the grant was accomplished.[7] Finally, the Applicant states that Region V's use of FP-205-081-2 as supporting rationale and authority violated Stafford Act § 325 because the policy was issued after the disaster event and that the policy is contrary to the United States District Court for the Southern District of Florida's interpretation of § 705(c) in *South Florida Water Management District v. FEMA (SFWMD)*.

**Discussion**

*Governing Authority*

In order to receive Federal grant assistance, a grantee must comply with all applicable federal laws and regulations, not merely the Stafford Act.[8] Moreover, as the recipient of Federal grant funding, the Grantee's obligations under Federal law, regulations, executive orders, and the terms and conditions of the FEMA-State agreement apply to sub-recipients of that funding as well and flow down to an applicant, thus making an applicant accountable to the Grantee to comply with all Federal grant requirements.[9] In addition to the Stafford Act, the PA program is governed by a myriad of laws, regulations and policies,[10] including OMB Circular A-110. OMB

---

[7] Letter from Attorneys, Ice Miller Legal Counsel, to Pub. Assistance Program Dir., IN Dep't of Homeland Sec., at 11 (Feb. 16, 2017) [hereinafter *Second Appeal Letter*].

[8] *See* Illinois Equal Employment Opportunity Regulations for Public Contracts, B-167015, 54 Comp. Gen. 6 (1974) (holding "[i]t is clear that a grantee receiving Federal funds takes such funds subject to any statutory or regulatory restrictions which may be imposed by the Federal Government. (citations omitted). Therefore, although the Federal Government is not a party to contracts awarded by its grantees, a grantee must comply with conditions attached to the grant in awarding federally assisted contracts.")

[9] *See* 44 C.F.R. § 13.37(a) (2007) (requiring Grantees to ensure that every subgrant includes any clauses required by Federal statute and executive orders and their implementing regulations and that applicants are aware of requirements imposed upon them by Federal statute and regulation).

[10] *See* The Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988, Pub. L. No. 93-288, §§ 316, 321, 325, and 701(a)(1) (mandating adherence to other statutory requirements and authorizing FEMA to implement Stafford Act provisions through Regulation and policies)_A-010_

Circular A-110, as codified at 2 C.F.R. Pt. 215, establishes standard requirements for Federal grants awarded to institutions of higher learning, hospitals, and other non-profit organizations and is applicable to all Federal agencies.[11]

As a non-profit hospital, the Applicant was required to follow the procurement standards found in 2 C.F.R. Pt. 215.[12]  While the Applicant argues that its procurement was not governed by 2 C.F.R. Pt. 215, it does not provide any support for this position.  Although the primary authority for PA funding is the Stafford Act, FEMA ensures compliance with other laws, including those governing procurement, when obligating Federal funds.  Per the FEMA-State Agreement, the Grantee, as the recipient of Federal grant funding, is required to follow all Federal statutory and regulatory requirements, not simply Stafford Act provisions.[13]  Pursuant to 2 C.F.R. §§ 215.0(b)(3) and 215.5, the requirements of the FEMA-State Agreement apply to and flow down to the Applicant as the sub-recipient of those funds.[14]  Here, the Grantee was required to follow 2 C.F.R. Pt. 215 which consequently applied to the Applicant.  In addition, the FEMA-State Agreement provided that "enforcement remedies shall be processed as specified under 44 C.F.R. § 13.43 when the Terms and Conditions… are not met."[15]  As such, the Applicant was required to comply with 2 C.F.R. Pt. 215 when procuring labor and equipment to complete disaster-related work in order to receive PA reimbursement.

While the Applicant makes arguments under both 44 C.F.R. Pt. 13 and 2 C.F.R. Pt. 215, it must be noted that, even though the Applicant is a county non-profit hospital, 2 C.F.R. Pt. 215 does not distinguish between non-profit hospitals that are private and those that are governmental units.  Although the Applicant argues it is a local governmental unit, and thus, not under the purview of 2 C.F.R. Pt. 215,[16] 44 C.F.R. § 13.4(a)(1) states that 44 C.F.R. Pt. 13 does not apply to state and local hospitals.  As such, the applicable authority for evaluating procurement requirements for this Applicant is 2 C.F.R. Pt. 215.[17]

---

[11] OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE PRESIDENT, OMB CIRCULAR A-110, UNIFORM ADMINISTRATIVE REQUIREMENTS FOR GRANTS AND AGREEMENTS WITH INSTITUTIONS OF HIGHER EDUCATION, HOSPITALS, AND OTHER NONPROFIT ORGANIZATIONS (1999) (codified at 2 C.F.R. Pt. 215).

[12] OMB A-110, 2 C.F.R. Pt. 215 applies to PA grants.

[13] FEMA-State Agreement, Exhibit C, Article III (stating, "[t]he Grantee agrees to comply with all applicable laws and regulations, including but not limited to the following law, regulations, and OMB Circulars that govern standard grant management practices and are incorporated into this Agreement by reference: The Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206 (Stafford Act); Title 44 of the Code of Federal Regulations (CFR); OMB Circulars A-21, A-87, A-102, A-110, A-122 and A-133; and 31 CFR § 205.6) (signed June 10, 2008).

[14] Cf. 44 C.F.R. § 13.37(a).

[15] FEMA-State Agreement, Exhibit C, Article IV.

[16] See 2 C.F.R. §§ 215.0(b)(3), 215.5 (2008).

[17] It is also important to note that many of the requirements found in OMB Circular A-110 also apply to state and local governments under OMB Circular A-102, Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments, as codified at 44 C.F.R. Pt. 13.

*Procurement Violations*

    *a.  Mandatory Compliance with 2 C.F.R. Part 215*

Adherence to Federal procurement laws is required to receive grant assistance.[18]   Contrary to what the Applicant asserts, compliance with 2 C.F.R. Pt. 215 is mandatory. In addressing non-compliance, FEMA has discretion to determine appropriate enforcement options on a case-by-case basis.[19]   At times, FEMA may exercise its discretion and award reasonable costs.

    *b.  Cost-Plus-a-Percentage-of-Cost Contracts*

A CPPC contract is a cost reimbursement contract containing some element that obligates the subgrantee to pay the contractor an amount (in the form of either profit or cost), undetermined at the time the contract was made and to be incurred in the future, based on a percentage of future costs.[20]   Unlike other disfavored but allowable contract mechanisms,[21] 2 C.F.R. § 215.44(c) strictly prohibits CPPC contracts.[22]   These contracting instruments are prohibited because they provide a disincentive for contractors to control costs (i.e., the more contractors charge, the more profit they make).[23]

In OIG-14-12-D, the OIG found that the Applicant awarded two CPPC contracts, the McCarthy and Paul Davis contracts, totaling $44,725,020.00.  The McCarthy contract was awarded for the Phase 1 rebuilding of the hospital while the Applicant procured the Paul Davis contract for emergency clean-up following the disaster.[24]   The OIG found both contracts were prohibited,[25] but only recommended FEMA deobligate the mark-up costs – $2,232,956.00.  FEMA concurred and deobligated the recommended amount.

---

[18] 2 C.F.R. § 215.5.

[19] *See* FEMA Second Appeal Analysis, *City of Springfield*, FEMA-1633-DR-IL, at 4 (Dec. 28, 2012) (concluding that the costs questioned by the OIG represented "a form of CPPC contract, and since CPPC contracts are prohibited…, these costs are ineligible for reimbursement under FEMA's Public Assistance Program."); *see also* FEMA Second Appeal Analysis, *City of Nome*, FEMA-4050-DR-AK, at 6 (Sep. 28, 2016) (determining that the Applicant did not comply with Federal procurement requirements; therefore, costs associated with contract work were not eligible for PA funding).

[20] *See* Muschany v. United States, 324 U.S. 49, 61-62 (1944).

[21] The Applicant states that CPPC contracts are the same contracting mechanism as time-and-material contracts. *See Second Appeal Letter*, at 13. However, the Regulations and FEMA policy distinguish between these two types of contracts—permitting time and material contracts in limited circumstances while strictly prohibiting CPPCs. See 2 C.F.R. § 215.44(c); *see also Public Assistance Guide*, FEMA 322, at 53 (June 2007) [hereinafter *PA Guide*]; *cf.* 44 C.F.R. §§ 13.36(b)(10), (f)(4).

[22] 2 C.F.R. § 215.44(c) (stating "[t]he 'cost-plus-a-percentage-of-cost' or 'percentage of construction cost' methods *shall not* be used") (emphasis added).

[23] U.S. DEP'T OF HOMELAND SEC. OFFICE OF INSPECTOR GEN. (OIG), OIG-14-12-D, FEMA SHOULD RECOVER $10.9 MILLION OF IMPROPER CONTRACTING COSTS FROM GRANT FUNDS AWARDED TO COLUMBUS REGIONAL HOSPITAL, COLUMBUS, INDIANA, at 6 (2013); *cf.* Decision of the Comptroller General, B-119292, 1954 U.S. Comp. Gen. LEXIS 649 (Oct. 8, 1954) ("Section 4(B) of the Armed Services Procurement Act of 1947 prohibits the use of the cost-plus-a-percentage-of-cost system of contracting. The intent of Congress in opposing this system is clearly discernible in the legislative history of this and other acts regulating government procurement. Conditions which it sought to prevent are those which provide an incentive and an opportunity for a contractor or subcontractor to increase his profit by increasing his costs at the expense of the government.").

[24] OIG-14-12-D at 6.

[25] *Id.* at 7.

A-012

On second appeal, the Applicant does not contest that the contracts used violated procurement requirements. In fact, the Applicant continually asserts that Federal procurement requirements are "a means to an end,"[26] strict compliance is not necessary, and "any alleged procurement violations are irrelevant and of no moment...."[27] The Applicant also argues the contracts were necessitated by exigent circumstances and the costs were reasonable. The Applicant's arguments are not compelling.

CPPC contracts are strictly prohibited by regulation and nothing in 2 C.F.R. Pt. 215 permits the use of CPPC contracts in exigent circumstances.[28] Nonetheless, exercising its discretionary authority under 2 C.F.R. §§ 215.61 and 215.62, FEMA has at times addressed an Applicant's noncompliance by reducing the award by the "mark-up" of the contracts.[29] Noting such, depending on the circumstances, FEMA could deobligate all funding associated with the contracts. In this instance, the former remedy, which aligns with the OIG recommendation, is appropriate since the concern over CPPC contracts is uncontrolled costs due to the additional percentage accrued for an undefined level of costs. As such, reducing the award by the amount of the additional percentage reduces the likelihood the costs claimed are unreasonable. As explained below, re-obligating the "mark-up" costs on these contracts is not warranted.

### c. *Free and Open Competition*

According to 2 C.F.R. § 215.43, an applicant is required to solicit contractors in a manner that provides, to the maximum extent practicable, free and open competition. While not defined in regulation, "free and open competition" generally means that contractors for a project are publicly solicited and all responsible sources are permitted to compete.[30]

The OIG recommended the greatest amount of disallowed funding for the Applicant's failure to allow for free and open competition. The OIG recommended disallowing a total of $8,699,025.00[31] awarded under two contracts—Rollins and Ernst & Young—for non-exigent work because the Applicant used pre-selected contractors when bidding the work, rather than advertising or otherwise publicizing its procurement to other potential qualified bidders. By utilizing a pre-selected list of vendors, the Applicant reduced the likelihood that the most cost-effective contractor was selected.

---

[26] *Second Appeal Letter* at 11.

[27] *Id.* at 25.

[28] Unlike 44 C.F.R. § 13.36(d)(4)(i)(B) which permits non-competitive procurement when the award of a contract is infeasible under a competitive procurement mechanism and "[t]he public exigency or emergency for the requirement will not permit delay resulting from competitive solicitation," no such condition-precedent exists in 2 C.F.R. Pt. 215. In addition, the Regulation defines "procurement by non-competitive proposals" as "procurement through solicitation of a proposal from any one source, or after solicitation of a number of sources, competition is determined inadequate." 44 C.F.R. § 13.36(d)(4).

[29] *See* 2 C.F.R. § 215.4 (permitting the Federal awarding agency to grant exceptions for procurement requirements under 2 C.F.R. Pt. 215 on a case-by-case basis); *PA Guide*, at 53.

[30] OIG-14-12-D at 4; *cf.* 48 C.F.R. § 2.101 (2007) (defining "full and open competition" with respect to a contract action as "all responsible sources are permitted to compete").

[31] Specifically, the OIG recommended disallowing $5,114,305.00 for the Rollins contract which related to building a flood wall (PW 2066), and deobligating $3,584,720.00 of costs awarded under the Ernst & Young contract for administrative work (PWs 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, and 2348).

The OIG further found that the Ernst & Young contract's hourly rates were unreasonably high for administrative services when compared to similar service contracts awarded by the Applicant and guidance provided in Disaster Assistance Policy (DAP) 9525.9, *Section 324 Management Costs and Direct Administrative Costs (DAC)*. Following the OIG audit, Region V conducted a review of the associated PWs and discovered an additional amount from other PWs where funding was reimbursed for DAC incurred by Ernst & Young. The total additional amount deobligated ($956,952.19) was captured in PWs 2373 and 2374.

In both instances of noncompliance with 2 C.F.R. § 215.43, the Applicant does not dispute the OIG's findings nor that its contracts violated Federal regulatory requirements. Instead, it argues that FEMA should award reasonable costs regardless of procurement violations. Again, FEMA's authority to award costs it deems reasonable is distinct from the Applicant's requirements under 2 C.F.R. Pt. 215.

As reflected in PW 2066, the Applicant used a pre-selected list of contractors to install a retaining wall. While Rollins may have been the lowest bidder among the five pre-selected contractors, there is no guarantee that it would have been the lowest had procurement been free and open. Moreover, as the OIG highlighted, the recommended disallowed costs were incurred after the exigent period expired.[32] Therefore, there is no practical reason why free and open competition should not have occurred. The Applicant argues that Region V should have considered the March 3, 2014 cost analysis conducted by FTI Consulting or its own CEF analysis which estimated the project to cost $6,556,121.00 as opposed to deobligating the full amount of the contract. However, by utilizing a preselected list of vendors, the Applicant reduced the likelihood that the most cost-effective contractor was selected. In addition, a CEF is an estimate of the project. Therefore, even though Rollins price was under the CEF, there is no guarantee that a contractor solicited under free and open competition would not have bid lower than both Rollins and the CEF.

Moreover, 2 C.F.R. § 215.45 requires some form of cost or price analysis and documentation in the procurement files in connection with every procurement action—the implication being that the cost/price analysis is done at the time of procurement. As the OIG noted, failure to conduct a cost or price analysis at the time of procurement increases the likelihood of unreasonable contract costs and misinterpretations or errors in pricing relative to the scopes of work.[33] The FTI analysis was completed in March 2014, years after the work was procured. In addition, Region V noted that the FTI analysis did not accurately reflect the prevailing costs for the locality at the time of solicitation. Consequently, Region V properly concluded that the FTI analysis was not as accurate as a cost analysis would have been had it been performed at the time of the procurement or the time that work commenced.

Regarding the Ernst & Young contract, the Applicant contests FEMA's decision to wholly deobligate costs, asserting that the actual costs incurred were reasonable because the contract was procured during the agreed upon exigent period. Typically, FEMA finds exigency when

---

[32] FEMA, the OIG and the Applicant agree the exigency period lasted through April 2009. However, the Rollins contract was entered into on April 20, 2011.

[33] OIG-14-12-D at 8.

A-014

lives or property are at stake or the work is for critical services or not permanent in nature.[34]   In comparison, FEMA awards costs for administrative activities, including identifying damage, attending the Applicant's briefing, establishing files and providing copies and documentation, preparing for audits, working with the State during project monitoring, final inspection, and audits, and assessing damage, collecting costs data and developing cost estimates,[35] and does not view such actions as "critical services" or done in furtherance of saving lives or property.  In this case, while the work may have been procured during the exigency period, it is administrative work and thus not exigent in nature.[36]

In addition, FEMA assesses the reasonableness of rates for administrative services based on complexity of the work or level of technical expertise needed.[37]  For instance, FEMA has previously determined that an hourly rate of $285 for administrative services was unreasonable absent evidence that the management tasks were complex.[38]  In this instance, the Applicant's documentation does not demonstrate that the administrative tasks were complex in nature justifying the rates charged.

Moreover, the scope of the Ernst & Young contract does not comport with 2 C.F.R. § 215.44[39] which compounds the issue of the rates charged for administrative services because the limited scope restricts FEMA's ability to determine whether the rate charged was reasonable for the work claimed.  The Applicant initially received contract proposals related to processing insurance claims, not administrative work.  Even though the Applicant solicited new proposals after FEMA raised concerns about the scope of work, the Applicant's modified solicitation only added the word "FEMA" to the scope.  The Applicant also failed to provide pre-award documentation to determine the proposed scope of services.

As such, that Applicant has not demonstrated that the exigency or technical level of services provided compelled the contractor to charge nor the Applicant to agree to rates between $300 and $550 per hour.  Had the Applicant competitively bid its administrative service contract per 2 C.F.R. § 215.43, the likelihood for potentially excessive rates would decrease.  Consequently, FEMA finds the decision to not award actual costs for the Ernst & Young contract is appropriate.

Alternatively, the Applicant requests FEMA award reasonable costs based on a previous second appeal decision[40] in which FEMA awarded reasonable costs for contracts not procured according to Federal procurement laws.  Specifically, the Applicant requests that FEMA reimburse costs based on the total hours claimed (5,233.06) multiplied by $155.00.  To support the proposed $155.00 figure, the Applicant cites to OIG-14-12-D which says FEMA approved this rate for

---

[34] Second Appeal Analysis, *Martinsville CUSD*, FEMA-1771-DR-IL, at 4 (July 19, 2016).

[35] *Public Assistance Policy Digest*, FEMA 321, at 4 (Jan. 2008).

[36] *See* Second Appeal Analysis, *City of Pierre*, FEMA-1984-DR-SD, at 11 (May 27, 2015) (defining "exigency" as "something that is necessary to a particular situation that requires or demands immediate aid or action").

[37] *See* Memorandum from Assistant Adm'r, FEMA Disaster Assistance Directorate, to Reg'l Adm'rs, FEMA Regions I-X, at 2 (Sep. 8, 2009).  The memorandum stated that a junior or mid-level technical or program specialist is appropriate for most PA projects.)

[38] Second Appeal Analysis, *City of Cedar Rapids*, FEMA-1763-DR-IA, at 11 (May 9, 2014).

[39] 2 C.F.R. § 215.44(a)(3)(i) (stating the scope of the contract must provide "a clear and accurate description of the technical requirements for the material, product or service to be procured").

[40] *Second Appeal Letter* at 29 (citing FEMA Second Appeal Analysis, *Henderson County*, FEMA-1771-DR-IL, (Sep. 20, 2013)).

administrative services that did not require highly technical expertise in a 2013 appeal decision.[41] However, neither the audit report nor the Applicant specify which 2013 appeal decision concluded $155.00 was a reasonable rate. FEMA presumes the Applicant is referencing a *City of Cedar Rapids* second appeal decision.[42] However, as explained in that appeal decision, the $155.00 rate was derived from an extensive cost analysis that applied to that particular disaster. This appeal involves dissimilar facts, a different declared event, a different geographic area, and other distinguishing factors that do not warrant FEMA applying the $155.00 rate in this appeal.

*Enforcement and Reasonable Costs*

Pursuant to 2 C.F.R. §§ 215.61 and 215.62, FEMA may disallow all or part of the cost of the activity or action not in compliance when an applicant materially fails to comply with the terms and conditions of an award. Compliance with Federal procurement requirements is a condition of the grant. Here, there is no question that the Applicant failed to comply with procurement requirements under 2 C.F.R. Pt. 215. As such, FEMA was within its authority to deobligate funding from the grant award.

In the case of procurement violations, FEMA will often use its discretionary authority to independently determine, on a case-by-case basis, whether contract costs are reasonable and fair and, depending on the nature of the violation may balance its desire to assist communities in their recovery with ensuring conditions of the grant are met, reimburse such costs.[43] A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost.[44] However, price is not the only factor considered in determining reasonable cost.[45] When determining whether a cost is reasonable, FEMA considers: (1) whether the cost is of a type generally recognized as ordinary and necessary for the performance of a Federal award; (2) the restraints or requirements imposed by Federal, State and other laws and regulations and conditions of the Federal award; (3) market prices for comparable good or services; (4) whether the individuals concerned acted with prudence in the circumstances given their responsibilities to the governmental units, its employees, the public at large, and the Federal government; and (5) significant deviations from the established practices of the governmental unit which may unjustifiably increase the Federal award's cost.[46] In applying the factors for determining reasonable costs, it is clear that the implicated contracts do not comport with several of them.

A CPPC contract does not comport with the factors considered when determining reasonable costs enumerated in OMB Circular A-87, *Cost Principles for State, Local, and Indian Tribal*

---

[41] OIG-14-12-D at 5.

[42] Second Appeal Analysis, *City of Cedar Rapids*, FEMA-1763-DR-IA (Apr. 22, 2013) (explaining that the Regional Administrator limited DAC rates to $155.00 an hour after FEMA performed an extensive cost analysis for the disaster).

[43] *See* Second Appeal Analysis, *City of Vero Beach*, FEMA-1545/1561-DR-FL, at 4 (Nov. 21, 2016); Second Appeal Analysis, *Nishnabotna Valley Rural Electric Cooperative*, FEMA-1880-DR-IA, at 6 (Nov. 7, 2016); *City of Nome*, FEMA-4050-DR-AK, at 5-6 (Sep. 28, 2016); *and* Second Appeal Analysis, *City of Ft. Lauderdale*, FEMA-1609-DR-FL, at 5-6 (Nov. 25, 2015).

[44] OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE PRESIDENT, OMB CIRCULAR A-87, COST PRINCIPLES FOR STATE, LOCAL, AND INDIAN TRIBAL GOVERNMENTS, ATTACHMENT A, SECTION C.2 (2004).

[45] Second Appeal Analysis, *St. Mary's Academy*, FEMA-1603-DR-FL, at 5 (Aug. 4, 2015).

[46] OMB Circular A-87.

A-016

*Governments.*[47]  As such, FEMA was within its authority to deobligate funding from the grant award.

Regarding the contracts that violate 2 C.F.R. § 215.43, the Applicant's argument that it should be awarded reasonable costs despite the violations is problematic because it wholly disregards the intent behind free and open competition.  The facts demonstrate that the Rollins contract was procured outside of the exigency period, and as such, did not warrant using non-competitive procurement procedures.  In addition, the rates charged by Ernest & Young were well above what other contractors were charging following the disaster as shown through historical data.  As such, beyond the Applicant failing to adhere with the requirements imposed by Federal law, it did not act prudently or reasonably when procuring the questioned contracts.  Accordingly, FEMA Region V acted appropriately when it deobligated funding associated with these procurement violations.  Therefore, no additional costs will be awarded through this second appeal decision.

*Stafford Act § 705(c) Applicability*

Stafford Act § 705(c) provides that a state or local government is not liable for reimbursement or any other penalty for any payment made pursuant to the Stafford Act if the payment was authorized in an approved agreement specifying costs, the costs were reasonable, and the purpose of the grant was accomplished.[48]  FEMA implemented this statutory provision[49] through its Recovery Policy FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures.*[50]

In applying FP-205-081-2 to the facts of the appeal,[51] FEMA finds the prohibitions of § 705(c) do not apply.  The statutory restriction is not applicable when a violation of mandatory Federal procurement requirements occurs because the purpose of the grant is not accomplished in such

---

[47] *See id.* (stipulating the Agency considers requirements imposed by Federal laws and regulations and conditions of the Federal award when determining reasonable costs); *see also PA Guide*, at 40 (stating eligible costs must not only be reasonable, but "compliant with Federal, State, and local requirements for competitive procurement").
[48] Stafford Act § 705(c).
[49] Section 705(c) is not a self-executing statutory provision.
[50] FEMA Recovery Policy FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures*, at 4-7 (Mar. 31, 2016) (interpreting 705(c) requirements as follows: (1) payment occurs when the recipient draws down funds obligated through SmartLink, regardless of whether the recipient has disbursed funds to the subrecipient, (2) the purpose of the grant is accomplished when the SOW is completed and the Applicant has demonstrated compliance with post-award terms, and (3) costs are reasonable if, in their nature and amount, they do not exceed that which would be incurred by a prudent person under similar circumstances).  In the second appeal, the Applicant challenges FEMA's use of FP-205-081-2 in analyzing Section 705(c) as it relates to the facts of this appeal, arguing that it violates Stafford Act § 325(a)(2).  Section 705(c), which restricts FEMA's ability to hold a state or local government liable for reimbursement or any other penalty for any payment made under the Stafford Act that meet the three prongs of the subsection, focuses on the Agency's ability to recover funds that were previously awarded rather than reducing through policy change the availability of assistance to applicants.
[51] FEMA Recovery Policy, FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures* applies to "all open PWs, meaning appeal, arbitration, or dispute resolution rights have not been exhausted and FEMA has not made a final administrative decision (e.g., an adjudicated second appeal, final arbitration decision)." FP-205-081-2, at 2.

Second Appeal Analysis, FEMA-1766-DR-IN, PA ID 005-UOFZF-00                                      Page 10 of 11
Columbus Regional Hospital, Multiple PWs

instances.[52] Here, the deobligated amount is associated with costs incurred under CPPC contracts and non-competitive contracts contra to 2 C.F.R. §§ 215.44 and 215.43, respectively. Therefore, due to the regulatory violations, the Applicant's claim does not meet the third prong of Stafford Act § 705(c).

**Conclusion**

By entering into CPPC contracts and using pre-selected bidders, the Applicant failed to comply with Federal procurement requirements and the conditions of the grant award. FEMA Region V took appropriate enforcement action pursuant to 2 C.F.R. §§ 215.61 and 215.62 to address those violations. Finally, Stafford Act § 705(c) does not preclude FEMA from deobligating funding because the purpose of the grant is not accomplished when procurement violations occur.

---

[52] *Id.* at 6 (stating, "[i]f, after the recipient has submitted the appropriate documentation, FEMA determines that the recipient or subrecipient failed to comply with a post-award term or condition of the award (such as federal requirements for procurement, environmental planning and historic preservation compliance, or obtaining and maintaining insurance), the purpose of the grant was not accomplished and FEMA is not prohibited by Section 705(c) from recovering payments as a remedy"); Second Appeal Analysis, *City of Coral Springs*, FEMA-1609-DR-FL, at 8 (May 19, 2017).

A-018

EXHIBIT 2



U.S. Department of Homeland Security
500 C Street, S.W. Mail Stop 3172
Washington, DC  20472-3172

February 27, 2018

**SENT VIA E-MAIL TO: Joshua.Schnell@icemiller.com**

Joshua Schnell
Ice Miller
20 F St NW
Washington, DC 20001

Re:  **FEMA FOIA Case Number 2018-FEFO-00508**

Dear Mr. Schnell:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Federal Emergency Management Agency (FEMA), dated February 22, 2018 and received in this office on February 23, 2018.  You are seeking the following records:

(1)      A complete copy of the administrative record the Federal Emergency Management Agency (FEMA) considered when FEMA denied Columbus Regional Hospital's second appeal related to allegedly improper costs. (See attached December 27, 2017, Second Appeal Denial).

(2)      A complete copy of the administrative record FEMA considered when FEMA denied Columbus Regional Hospital's first appeal related to allegedly improper costs.

(3)      Copies of any grant agreements, cooperative agreements, contracts, or other agreements related to disaster assistance that were entered into by FEMA and Columbus Regional Hospital..

The increasing number of FOIA requests received by this office may cause some delay in processing your request.  Consistent with 6 Code of Federal Regulations § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances. As your request seeks a voluminous amount of separate and distinct records, DHS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B).  If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS FOIA regulations as they apply to commercial requesters.  As a commercial requester, you will be charged 10 cents per page for duplication, and for search and review time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher and

reviewer. You stated in your request that you are willing to pay assessable fees up to $600. This office will contact you before accruing any additional fees.

We have queried the appropriate FEMA organizations for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2018-FEFO-00508**. Please refer to this identifier in any future correspondence. To check the status of your FOIA request, you may contact this office at (202) 646-3323 or email at FEMA-FOIA@fema.dhs.gov, or you may check the status of your request online at https://www.dhs.gov/check-status-your-foia-request.


                    Sincerely,



                    Paula Presley
                    FOIA Program Specialist

# EXHIBIT 3



LEGAL COUNSEL

20 F Street N.W. | Suite 850 | Washington, DC 20001

Chicago   Cleveland   Columbus   DuPage County, Ill.
Indianapolis   New York   Philadelphia   Washington, D.C.

August 10, 2018

WRITER'S DIRECT NUMBER: (202) 572-1603
DIRECT FAX: (202) 572-1604
EMAIL: Joshua.Schnell@icemiller.com

***Sent Via Email***

FEMA Information Management Division
500 C Street, S.W.
Washington, D.C. 20472
fema-foia@fema.dhs.gov

      RE:    FOIA Request for Records Related to Columbus Regional Hospital's Two Administrative Appeals (PA ID 005-UOFZF-00)

Dear Freedom of Information Act Officer:

      My firm represents Columbus Regional Hospital (Columbus), and I write regarding the attached February 22, 2018, Freedom of Information Act (FOIA) request that I submitted on Columbus's behalf.[1]  Under FOIA, FEMA was required to provide us with records responsive to our request within 20 business days.  Nevertheless, we have been waiting almost six months for a response from FEMA.  Accordingly, please be advised that we intend to file a FOIA lawsuit in Federal court if FEMA does not provide us with records responsive to our request by August 20, 2018.

      FOIA imposes strict deadlines on FEMA for responding to records requests.  Specifically, within 20 business days of receiving a FOIA request, FEMA must (1) determine whether to disclose responsive records and (2) notify the requester of the rationale for its determination.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  This determination must indicate the scope of the documents that FEMA will produce and any applicable exemptions.  *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n.*, 711 F.3d 180, 184 (D.C. Cir. 2013).  Further, an adverse determination must inform the requester of its right to appeal FEMA's determination.  *See Id.*  FEMA may only extend the 20-day statutory deadline in "unusual circumstances," and only for a maximum of 10 business days.  *See* 5 U.S.C. § 552(a)(6)(B)(i)-(iii).  When relying upon such an extension, FEMA must "provide an estimated date on which the agency will complete action of the request."  5 U.S.C. § 552(a)(7)(B)(ii).

      Here, FEMA has failed to meet FOIA's statutory deadline for almost six months.  Columbus, however, cannot afford to wait any longer to receive the records it is entitled to under FOIA.  Accordingly, if FEMA does not provide us with these records by August 20, 2018, we intend to enforce our rights in Federal court.  Given FEMA's conduct, we are confident that the court will, among other things, order FEMA to produce the responsive records and pay Columbus's legal fees.

---

   [1]  *See* Ex. 1, Nov. 21, 2017, FOIA Request.

Freedom of Information Act Officer
FEMA
August 10, 2018
Page 2


     I sincerely hope that we can avoid the need for litigation.  Please contact me at your earliest convenience if you would like to discuss further.


          Best regards,

          ICE MILLER LLP


          Joshua Schnell



20 F Street N.W. | Suite 850 | Washington, DC 20001

Chicago    Cleveland    Columbus    DuPage County, Ill.
Indianapolis    New York    Philadelphia    Washington, D.C.

February 22, 2018

WRITER'S DIRECT NUMBER: (202) 572-1603
DIRECT FAX: (202) 572-1604
EMAIL: Joshua.Schnell@icemiller.com

## FOIA REQUEST

***Via Email***

FEMA Information Management Division
500 C Street, S.W.
Washington, D.C. 20472
fema-foia@fema.dhs.gov

> **RE:   *FOIA Request for Records Related to Columbus Regional Hospital's Two Administrative Appeals (PA ID 005-UOFZF-00)***

Dear Freedom of Information Act Officer:

I write to request records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and applicable Department of Homeland Security regulations at 6 C.F.R. §§ 5.1 to 5.13.

I.   Description of Records Sought

Please produce the following records:

(1)   A complete copy of the administrative record the Federal Emergency Management Agency (FEMA) considered when FEMA denied Columbus Regional Hospital's second appeal related to allegedly improper costs. (*See* attached December 27, 2017, Second Appeal Denial).

(2)   A complete copy of the administrative record FEMA considered when FEMA denied Columbus Regional Hospital's first appeal related to allegedly improper costs.  (*See* attached December 20, 2016, First Appeal Denial).

(3)   Copies of any grant agreements, cooperative agreements, contracts, or other agreements related to disaster assistance that were entered into by FEMA and Columbus Regional Hospital.

II.   Willingness to Pay Fees

I am willing to pay fees for this request up to $600.  Please contact me as soon as possible if you estimate that FEMA's fees will exceed this limit.

Freedom of Information Officer
FEMA
February 22, 2018
Page 2

III.     FOIA Exemptions

If you decide to invoke any FOIA exemptions in response to this request, please include sufficient information for me to assess the basis for each asserted exemption.  For example, if FEMA withholds any administrative record documents (or portions of a document) under FOIA exemption 5, please identify FEMA's legal authority for asserting privilege over a document that is part of an administrative record.  This information will help me decide whether to appeal an adverse determination.

IV.     Conclusion

Thank you for your attention to this FOIA request.  If possible, please email the requested records to me at joshua.schnell@icemiller.com.   If email is not possible, you may mail the records to me at the following address:

> Joshua Schnell
> Ice Miller LLP
> 20 F St. N.W.
> Suite 850
> Washington, D.C. 20001

Please do not hesitate to call or email me to clarify the request or otherwise expedite and simplify your efforts to comply.

Best regards,

ICE MILLER LLP

Joshua Schnell

A28

## APPENDIX TABLE OF CONTENTS

December 20, 2016, First Appeal Denial…………………………………………………A-001

December 27, 2017, Second Appeal Denial…………………………………………………A-007



**U.S. Department of Homeland Security**
Region V
536 S. Clark St., 6th Floor
Chicago, IL 60605-1509

December 20, 2016

Mr. David Kane, Director                    Mr. Brent W. Huber, Ice Miller LLP
Indiana Dept. of Homeland Security          Columbus Regional Hospital
Indiana Government Center South             One American Square Suite 2900
302 W. Washington Street – Room E-208       Indianapolis, IN  46282
Indianapolis, IN  46204-4701

Re:    First Appeal Determination – Columbus Regional Hospital, PA ID 005-UOFZF-00
       FEMA-1766-DR-IN, PWs 1530, 1904, 2013, 2014, 2184, 2206, 2210, 2374, 2066, 2073,
       2348, and 2373 – Hospital Restoration and Sec. 406 Hazard Mitigation

Dear Mr. Kane and Mr. Huber:

FEMA Region V has conducted an initial review of the first appeal submitted by Indiana
Department of Homeland Security (Grantee) on June 9, 2014 on behalf of Columbus Regional
Hospital (Subgrantee).  The Subgrantee is appealing the U.S. Department of Homeland
Security's Federal Emergency Management Agency's (FEMA) denial of costs in the amount of
$9,612,831.19 incurred by means of improperly procured contracts for restoration of the hospital
basement and first floor as well as hazard mitigation measures.

As explained in the enclosed analysis, the OIG Audit found Federal procurement requirements
were not followed and improper "cost plus a percentage of cost" contracts were used.  The OIG
and FEMA determined the costs associated with these federal procurement violations, in the
amount of $9,612,831.19 ($7,285,317.20 federal share), are not eligible.  Accordingly, this
appeal is denied.

The Subgrantee may appeal this determination to the Assistant Administrator, Recovery
Directorate, at FEMA Headquarters pursuant to 44 C.F.R., § 206.206, **Appeals**.  If the
Subgrantee elects to file such a second appeal, the appeal must: 1) contain documented
justification supporting the Subgrantee's position, 2) specify the monetary figure in dispute, and
3) cite the provisions in federal law, regulation, or policy with which the Subgrantee believes the
initial action was inconsistent.  A second appeal must be submitted to the Grantee, by the
Subgrantee, within 60 days of the Subgrantee's receipt of this letter.  The Grantee's transmittal
of that appeal, with recommendation, is due to the FEMA Region V office within 60 days of
receipt of the Subgrantee's letter.  This office will transmit the second appeal to FEMA
Headquarters.

Sincerely,

Janet M. Odeshoo
Acting Regional Administrator

FIRST APPEAL ANALYSIS
FEMA-1766-DR-IN
Columbus Regional Hospital, PA ID 005-UOFZF-00
Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,
and 2206, Hospital Restoration and Hazard Mitigation, 705

## Background

The State of Indiana experienced severe storms and flooding from May 30, 2008 to June 27, 2008. A Major Disaster was declared by the President on June 8, 2008 (FEMA-1766-DR-IN), making available disaster aid to supplement state and local recovery efforts in affected areas. Bartholomew County was one of the declared counties.[1] Within a few days of the declaration, the Governor of Indiana and the Regional Administrator for FEMA Region V executed the FEMA-State Agreement, which sets forth the understandings, commitments, and conditions under which FEMA provides disaster assistance.

Columbus Regional Hospital (CRH) (Subgrantee) is a county non-profit hospital located in the City of Columbus, which is the County seat of Bartholomew County, Indiana. CRH is a 225-bed facility that provides emergency and surgical services and comprehensive care in numerous specialty areas.

On June 7, 2008, flash flood waters severely damaged the hospital. The basement, which contained much of the hospital's medical and lab equipment, and central utility plant were inundated with contaminated water from floor to ceiling. All of the contents and equipment in the basement were damaged or destroyed. The first floor was also inundated with up to 18 inches of flood water. CRH pumped the flood waters from the building between June 7, 2008 to June 9, 2008, leaving behind mud and silt. CRH procured a number of contractors to clean-up, repair, and remediate the hospital. CRH officials closed the facility and partially reopened in October 2008. CRH did not return to full capability until the end of April 2009.

On June 30, 2008, the Subgrantee submitted a Request for Public Assistance[2] form to FEMA to apply for funding to supplement the hospital's recovery efforts. FEMA personnel developed hundreds of Project Worksheets (PWs) to document all of the projects needed to clean-up, repair, and remediate the hospital.[3] The total award amount for these PWs was $74.7 million.

Early on in the PW development process, FEMA expressed concern about the Subgrantee's procurement actions and informed CRH that procurement needed to comply with applicable Federal grant procurement requirements.[4] The Case Management Detail Report[5] prepared by

---

[1] President Declares Major Disaster for Indiana, Release Number: HQ-08-094 (June 9, 2008), http://www.fema.gov/news-release/2008/06/09/president-declares-major-disaster-indiana
[2] The Request for Public Assistance (RPA) is the official application for FEMA's disaster assistance. The RPA starts the grant process and opens the case management file, which contains general claim information as well as records of meetings, conversations, phone messages, and any special issues or concerns that may affect funding.
[3] Fact Sheet: 9580.5, *Elements of a Project Worksheet* (2008) ("The PW is the primary form used to document the project and includes the location, damage description and dimensions, scope of work, and cost estimate for each project.")
[4] Letter from David Smith, Field Attorney, FEMA Office of Chief Counsel, to Brent Huber, Legal Counsel, Ice Miller LLP (Sept. 26, 2008) and Email from David Smith, Regional Counsel, FEMA Region X, to Amanda Ratliff, PA Branch Chief, FEMA Region V (Dec. 17, 2014).
[5] Beverley Frieday, Case Management Detail Report, Disaster #1766, (Apr. 28, 2009).

1

**FIRST APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,**
**and 2206, Hospital Restoration and Hazard Mitigation, 705**

non-competitive contracts for non-exigent work, another two were prohibited cost-plus-percentage-of-costs contracts for exigent work, and all nine contracts involved violations of other Federal procurement standards. The OIG found that CRH violated six Federal grant procurement requirements:

1. Perform procurement transactions in a manner to provide, to the maximum extent practical, open and free competition. (2 C.F.R. § 215.43)
2. Do not use the prohibited cost-plus-a-percentage-of-cost method of contracting. (2 C.F.R. § 215.44(c))
3. Include required provisions in all of their contracts. (2 C.F.R. § 215.48 and Appendix A to Part 215 – Contract Provisions)
4. Make positive efforts to use small businesses, minority-owned firms, and women's business enterprises, whenever possible. (2 C.F.R. § 215.44(b))
5. Prepare and document some form of cost or price analysis in connection with every procurement action. (2 C.F.R. § 215.45)
6. Provide a clear and accurate description of the project requirements for the material, product, or service to be procured. (2 C.F.R. § 215.44(a)(3)(i))

The following chart shows which requirement each procurement action violated.

| Contract Amount ($) | Questioned Amount ($) | Contractor | PWs | Contract Scope of Work | Procurement Standards 1-6 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 1 | 2 | 3 | 4 | 5 | 6 |
| 5,114,305 | 5,114,305 | Rollins | 2066 | Flood Wall | X | | X | X | | |
| 3,584,720 | 3,584,720 | Ernst & Young | 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210, and 2206 | Project Administration | X | | X | X | | X |
| 38,916,492 | 1,675,802 | McCarthy | 2066 | Restoration Work | | X | X | X | | |
| 5,808,528 | 557,154 | Paul Davis | 1540 and 2014 | 1st Floor Clean-up | | X | X | X | X | |
| 3,898,889 | 47,959.87 | BMS-CAT[11] | 1904 and 2013 | Basement Clean-up | | X | X | X | X | |
| Totals: | | | | | | | | | | |
| 64,791,798 | 10,979,941 | | | | | | | | | |

---

[11] The information for BMS-CAT was added to the chart upon further review by Region V, which discovered that the contract included several cost-plus-a-percentage-of-cost provisions that were not discussed in the audit report. By adding this amount to the questioned costs, the OIG recommended deobligation of $10,931,981 becomes $10,979,941.

3

FIRST APPEAL ANALYSIS
FEMA-1766-DR-IN
Columbus Regional Hospital, PA ID 005-UOFZF-00
Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,
and 2206, Hospital Restoration and Hazard Mitigation, 705

      3)  CRH relied on statements made by FEMA staff that following procurement policies
         required by accreditation would not be an issue.

On June 17, 2014, FEMA Region V informed the OIG that the Corrective Action Plan was
implemented. The memorandum noted that the region deobligated $9,612,831.19
($7,285,317.20 Federal share), as ineligible costs.[14] This amount was arrived at in collaboration
with OIG staff.

On April 2, 2015, the FEMA Region V Regional Administrator sent a notification to the Grantee
and the Subgrantee that adjudication of the appeal would be delayed.[15] All appeals with the
potential applicability of Section 705 of the Robert T. Stafford Disaster Relief and Emergency
Assistance Act were put on hold until they could be reviewed by a multi-Directorate group at
FEMA Headquarters (HQ) with expertise in the matter. Within 90 days of receipt of the
guidance from the multi-Directorate group, FEMA Region V would notify the Grantee and
Subgrantee of the disposition of the appeal.

On March 31, 2016, FEMA issued Recovery Policy 205-081-2, Stafford Act Section 705,
*Disaster Grant Closeout Procedures*.[16] The policy clarifies FEMA's requirements under Section
705 of the Stafford Act, and establishes the guidelines to determine whether Section 705
prohibits FEMA from recovering payments made under the PA program.

FEMA Region V sent a final Request for Information (RFI) to the Grantee and Subgrantee on
August 8, 2016, giving the Subgrantee a final opportunity to add any documentation to the
Administrative Record.[17] The Subgrantee's legal counsel responded to the final RFI request in a
letter dated September 7, 2016, and included several more documents to be added to the
Administrative Record.[18] CRH reasserted its appeal arguments.

---

[14] FEMA adjusted the deobligation amount, after the original OIG recommendation, upon discovery of a calculation error.
[15] Letter from Andrew Velasquez III, Regional Administrator, FEMA Region V, to Arvin Copeland, Director, Indiana Department of Homeland Security, and Marlene Weatherwax, Administrator, Columbus Regional Hospital (April 2, 2015).
[16] Recovery Policy FP 205-081-2, *Disaster Grant Closeout Procedures* (Mar. 31, 2016).
[17] Letter from Andrew Velasquez III, Regional Administrator, FEMA Region V, to Arvin Copeland, Director, Indiana Department of Homeland Security, and Marlene Weatherwax, Administrator, Columbus Regional Hospital (August 8, 2016).
[18] Letter from Brent Huber, Legal Counsel, Ice Miller LLP, to Carmen Goodman, Public Assistance Program Director of Indiana Department of Homeland Security, Amanda Ratliff, FEMA Region V, and Arvin Copland, Director of the Indiana Government Center South (Sept 7, 2016).

5

FIRST APPEAL ANALYSIS
FEMA-1766-DR-IN
Columbus Regional Hospital, PA ID 005-UOFZF-00
Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,
and 2206, Hospital Restoration and Hazard Mitigation, 705

accurate a picture as if the analysis had been done at the time of the procurement and the project work.

Additionally, Federal rules in awarding contracts prohibit cost-plus-a-percentage-of-cost contracts and require full and open competition to lessen the risk of fraud, waste, and abuse. Congress intended for work funded with Federal dollars to provide opportunities for disadvantaged firms, such as minority firms and women's business enterprises.[22] FEMA has a fiduciary duty to taxpayers to hold Federal grant recipients accountable for noncompliance with the Federal procurement requirements, and to establish disincentives for noncompliance. While the work performed may have helped the hospital recover from the disaster, the hospital's recovery was not the only intended purpose of the Federal grant. By circumventing Federal procurement requirements, CRH did not accomplish the purpose of the grant, which includes complying with federal laws and regulations.

FEMA does not dispute that CRH qualifies as a unit of local government. However, it is first and foremost a hospital, and OMB Circular A-110 applies to all hospitals – both public and private. OMB Circular A-110 was codified, at the time, at 2 C.F.R. Part 215. While CRH has argued that A-110 does not apply to units of local government, CRH has overlooked the fact that A-110 applies to institutions of higher education, hospitals, and other non-profit organizations. There is no specification for any of those organizations that being run by a unit of local government exempts them from following Federal grant requirements. As such, CRH is bound by the requirements of the circular.

***FEMA May Deobligate Awards Wholly and in Part; FEMA Has Looked At All Information and Has Not Considered CRH's Financial Status***

CRH argues that de-obligation of funds because of procurement violations is improper because neither the Stafford Act, nor any related regulations, mandate de-obligation for procurement violations. This argument ignores OMB Circular A-110. FEMA has multiple options to remedy non-compliance with Federal procurement regulations, one of which is to wholly or partially terminate the award.[23] FEMA has discretionary enforcement authority with regard to procurement requirements that it exercises on a case-by-case basis.[24] In this case, the cost analysis, while provided well after the fact, is insufficient for FEMA to determine that the costs, at the time, were reasonable.

---

[22] Office of the Inspector General, IOG-16-126-D, *FEMA Can Do More to Improve Public Assistance Grantees' and Subgrantees' Compliance with Federal Procurement Rules*, at 2 (Sep. 2, 2016). https://www.oig.dhs.gov/assets/GrantReports/2016/OIG-16-126-D-Sep16.pdf
[23] 2 C.F.R. § 215.61 and §215.62. "If a recipient materially fails to comply with the terms and conditions of an award, whether stated in a Federal statute, regulation, assurance, application or notice of award, the Federal awarding agency may . . . [d]isallow . . . all or part of the costs of the activity or action not in compliance."
[24] 2 C.F.R. § 215.4. *See also*, FEMA Second Appeal Analysis, *City of Nome*, FEMA-4050-DR-AK, at 4 (Sep. 28, 2016) https://www.fema.gov/appeal/293098?appeal_page=analysis

7

**FIRST APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets (PWs) 2066, 2373, 1530, 2014, 2013, 2073, 1904, 2184, 2348, 2374, 2210,**
**and 2206, Hospital Restoration and Hazard Mitigation, 705**

be no issues of procurement to overcome at a later date."[27]  Unfortunately, CRH incorrectly summarizes, mischaracterizes, and reinterprets the FCO's statements.

A letter from CRH to FEMA, dated January 27, 2009, and meeting notes from the September 25, 2008 meeting provide context to the meeting and demonstrate that the FCO did not agree to exempt CRH from compliance with Federal grant procurement requirements.  The discussion was actually about the standards of accreditation that must be met by CRH, being a critical medical facility in the State of Indiana.  According to CRH, the Healthcare Facilities Accreditation Program (HFAP) has a requirement that critical medical facilities maintain a Medical Equipment Management program for hospital equipment.  The Medical Equipment Management program restricts the acquisition of medical equipment to purchase from certified vendors.  If CRH was to purchase equipment from non-certified vendors, CRH could have its critical medical facility certification revoked.  According to the January 27, 2009 letter, CRH wrote that the FCO stated that as long as CRH purchased replacement equipment in accordance with the accredited Medical Equipment Management program, the purchase costs for the replaced equipment would not be an issue for FEMA.

The case cited by CRH does not support an argument of detrimental reliance.  CRH infers in its first appeal letters that it detrimentally relied upon misleading or incorrect statements made by the FCO by citing to *McWaters v. FEMA*, 408 F.Supp. 2d 221 (E.D. La 2005) as holding that "FEMA is responsible for any costs incurred by a party based on reliance of any incorrect and misleading statements of FEMA's field representatives."  CRH incorrectly summarizes and misapplies the *McWater* case to this appeal.  The Seventh Circuit held that "[n]o field employee can commit the agency to pay more than the statute and regulations require."[28]  More specifically, the Seventh Circuit found that CRH would buy new equipment "no matter what FEMA did or said."[29]  Thus, the Seventh Circuit declined to find CRH detrimentally relied on FEMA statements.

Furthermore, the *McWater* case actually involves whether the "discretionary function exception" applied to actions taken by FEMA in the aftermath of Hurricane Katrina.[30]  The exception, however, does not apply when a Federal statute, regulation, or policy specifically prescribes a

---

[27] Letter from Brent Huber, Ice Miller, to Andrew Velasquez III, Reg'l Adm'r., Fed. Emergency Mgn't Agency (June 6, 2014), 18.
[28] *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 899 (7th Cir. 2013) (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990)) (FEMA cannot be "estopped without detrimental reliance."). http://media.ca7.uscourts.gov/cgi-bin/rssExec.pl?Submit=Display&Path=Y2013/D02-20/C:12-2007:J:Easterbrook:aut:T:fnOp:N:1086073:S:0
[29] *Id.*
[30] *McWaters v. FEMA*, 408 F. Supp. 2d 221, 235 (E.D. La. 2005) (The court found that: 1) there is no mandatory provision of law that requires FEMA to notify all applicants that the Shared Household Rule would no longer be enforced; 2) there is no mandatory provision of law that requires FEMA to notify all applicants that certain restrictions on rent assistance funds were waived; 3) FEMA violated a statutory duty by failing to articulate to applicants that SBA loan applications are not required to receive Temporary Housing Assistance; and 4) FEMA violated a statutory duty by taking actions that discriminated economically disadvantaged applicants.)

9

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

DEC 2 7 2017

 **FEMA**

Bryan Langley
Director
Indiana Department of Homeland Security
302 West Washington Street, Room E-208
Indianapolis, Indiana 46204

Re:  Second Appeal – Columbus Regional Hospital, PA ID 005-UOFZF-00, FEMA-1766-DR-IN,
     Multiple Project Worksheets – OIG Audit, Procurement, 705(c)

Dear Mr. Langley:

This is in response to a letter from your office dated March 7, 2017, which transmitted the
referenced second appeal on behalf of Columbus Regional Hospital (Applicant).  The Applicant
is appealing the Department of Homeland Security's (DHS) Federal Emergency Management
Agency's (FEMA) deobligation of $9,612,831.19 for violations of Federal procurement
requirements found in Title 2 of the Code of Federal Regulation (C.F.R.) Part 215 following a
DHS Office of Inspector General audit.

As explained in the enclosed analysis, I have determined that Acting Regional Administrator of
FEMA Region V acted within her authority pursuant to 2 C.F.R. §§ 215.61 and 215.62 in
deobligating costs associated with procurement violations.  In addition, Stafford Act § 705(c)
does not apply when procurement violations occur, as is the case here, because the purpose of the
grant is not accomplished.  Therefore, I am denying this appeal.

Please inform the Applicant of my decision.  This determination is the Agency's final decision
on this matter pursuant to 44 C.F.R. § 206.206, **Appeals**.

Sincerely,

Alex Amparo
Assistant Administrator
Recovery Directorate

Enclosure

cc: James K. Joseph
    Regional Administrator
    FEMA Region V

A-007

A36

**SECOND APPEAL ANALYSIS**
**FEMA-1766-DR-IN**
**Columbus Regional Hospital, PA ID 005-UOFZF-00**
**Project Worksheets 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, 2348, 2373**
**and 2374 – OIG Audit, Procurement, 705(c)**

**Background**

From May 30 to June 27, 2008, the State of Indiana experienced severe storms and flooding which caused damage to Columbus Regional Hospital's (Applicant) medical facility.  The Applicant procured contract labor to address emergency and permanent work required as a result of the disaster.  Specifically, the Applicant procured Rollins Construction Company to build a flood wall, Ernst & Young, LLP to complete administrative services associated with the grant, McCarthy Building Companies to perform restoration work, and Paul Davis Restoration, Inc. to clean up the first floor of the hospital.  FEMA prepared various Project Worksheets (PWs), including PWs 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, and 2348 reflecting such disaster work.

In 2013, the Department of Homeland Security's (DHS) Office of Inspector General (OIG) issued Audit Report OIG-14-12-D, *FEMA Should Recover $10.9 Million of Improper Contracting Costs from Grant Funds Awarded to Columbus Regional Hospital, Columbus, Indiana*, after its investigation demonstrated that the Applicant committed several procurement violations pursuant to Title 2 of the Code of Federal Regulation (C.F.R.) §§ 215.43, 215.44, 215.45 and 215.48.  The OIG ultimately recommended that FEMA deobligate a total of $10,931,981.00 from various PWs.[1]  FEMA Region V initially concurred with the OIG's recommendation and deobligated the full recommended amount, but later adjusted the deobligated amount to $9,612,831.19[2] upon discovery of a calculation error.  Additionally, Region V conducted its own review of the PWs related to one of the contracts questioned by the OIG and deobligated additional funding as captured in PWs 2373 and 2374.[3]

*First Appeal*

On June 6, 2014, the Applicant appealed FEMA's determination to disallow funding, as recommended by the OIG, due to procurement violations.  The Applicant accused the OIG of not conducting its audit in compliance with the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act) § 705 and FEMA's closeout procedures by "focusing on procurement violations and other factors that are irrelevant in a Stafford Act audit of a governmental unit."[4]  The Applicant further asserted that, even if Stafford Act § 705 did not exist, there was no basis for deobligating all of its aid, only the amount FEMA deemed unreasonable.  Additionally, the Applicant stated that FEMA's determination should consider its

---

[1] U.S. DEP'T OF HOMELAND SEC. OFFICE OF INSPECTOR GEN. (OIG), OIG-14-12-D, FEMA SHOULD RECOVER $10.9 MILLION OF IMPROPER CONTRACTING COSTS FROM GRANT FUNDS AWARDED TO COLUMBUS REGIONAL HOSPITAL, COLUMBUS, INDIANA, at 9 (2013).

[2] Independently, FEMA deobligated the following amounts from each project worksheet (PW): PW 2184 -$26,143; PW 2013 -$112,619; PW 2066 -$7,710,091; PW 2014 -$244,043; PW 1904 -$26,013; PW 2348 -$21,635; PW 2210 -$4,573; PW 2206 -$1,634; PW 1530 -$473,219; PW 2073 -$35,909; PW 2373 -$951,558; and PW 2374 -$5,393.

[3] FEMA Region V reviewed all of the PWs that included costs claimed under the Ernst & Young contract for administrative services.  In doing so, the Region found an additional $956,952.19 ineligible for Public Assistance (PA) reimbursement and prepared PWs 2373 and 2374 to specifically address the additional deobligation.

[4] Letter from Counsel, Ice Miller Legal Counsel, to Reg'l Adm'r, FEMA Region V, at 2 (June 6, 2014).

A008

consultant's cost analysis, the OIG's miscalculations concerning the costs at issue, and exigent circumstances, but not the financial status of the hospital. Finally, the Applicant argued that it was not bound by the procurement rules and regulations cited by the OIG because it is a hospital and a governmental unit.

On August 8, 2016, FEMA Region V sent a Final Request for Information (RFI) to the Applicant identifying outstanding concerns that the Applicant had not complied with Federal procurement requirements. Region V requested that the Applicant demonstrate it was exempt from complying with 2 C.F.R. Pt. 215 and OMB Circular A-110, *Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Nonprofit Organizations*. The Region also provided information regarding the development of FEMA Recovery Policy FP 205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures*, and stated that Section 705(c) did not apply because the Applicant, by failing to comply with post-award terms and conditions, did not accomplish the purpose of the grant. Region V requested that the Applicant provide any additional information within 30 days of receipt of the Final RFI.

The Applicant responded to FEMA's Final RFI on September 7, 2016, clarifying several of its arguments. First, the Applicant stated that the Administrative Record was unclear and that it could not determine what documents were missing in order to supplement it. The Applicant also stated that the Administrative Record included many documents it was not privy to, including the FP 205-081-2 policy. Further, the Applicant argued that FEMA erred in deobligating funds because the costs were reasonable and neither the Stafford Act nor regulation mandates such action. The Applicant also argued that deobligation was improper under the plain meaning of Stafford Act § 705(c) which "serves as a statutory barrier to FEMA's ability to deobligate funds."[5] Specifically, the Applicant asserted that FEMA's reliance on FP 205-081-2 in determining that the purpose of the grant was not accomplished, and thus, that all three elements of Section 705(c) were not met, was improper because the policy was issued after the disaster date. The Applicant went on to say, "[s]trict compliance with procurement regulations might provide an incidental benefit from the grant, but cannot be said to be the 'purpose' of the grant...."[6] Finally, the Applicant asserted that nothing in the FEMA-State Agreement requires strict compliance with every regulation that might potentially apply to grant administration.

On December 20, 2016, the FEMA Region V Acting Regional Administrator (RA) denied the first appeal for multiple reasons. First, the RA found that the Applicant did not follow federal procurement requirements when it used costs plus a percentage of cost (CPPC) contracts to repair its hospital. Next, the RA noted that the Applicant—as a hospital—was required to follow OMB A-110, *Uniform Administrative Requirements for Grants and Agreements With Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations*, when procuring contracts for projects obligated under the Public Assistance (PA) program. Finally, the RA determined that Stafford Act § 705(c), as implemented by FP 205-081-2, *Disaster Grant Closeout Procedures*, did not apply, and FEMA was not prohibited from deobligating funding because the

---

[5] Letter from Counsel, Ice Miller Legal Counsel, to Pub. Assistance Program Dir., IN Dep't of Homeland Sec. and Pub. Assistance Branch Chief, FEMA Region V, at 4 (Sep. 7, 2016).
[6] *Id.* at 5.

Applicant materially failed to comply with the terms of the grant in securing contracts that violated Federal procurement regulations.

*Second Appeal*

In its second appeal, dated February 16, 2017, the Applicant states that FEMA Region V erred in calculating the costs at issue and did not consider exigent circumstances and other factors surrounding its contracting decisions. Additionally, the Applicant argues that the costs are reasonable, and Region V should have considered its consultant's cost/price analysis performed after it entered in to the contracts. Finally, the Applicant asserts that CPPC contracts are the same as time and materials contracts—for which FEMA has allowed reasonable costs in past instances.

The main focus of the appeal is that FEMA is prohibited from deobligating funding by Stafford Act § 705(c) because all three prongs of the subsection are satisfied. The Applicant additionally argues that deobligation was improper under the plain reading of the language of Section 705(c) because the statute is clear and FEMA did not originally contest the issue of whether payment was authorized pursuant to an approved agreement specifying costs or whether the purpose of the grant was accomplished.[7] Finally, the Applicant states that Region V's use of FP-205-081-2 as supporting rationale and authority violated Stafford Act § 325 because the policy was issued after the disaster event and that the policy is contrary to the United States District Court for the Southern District of Florida's interpretation of § 705(c) in *South Florida Water Management District v. FEMA* (*SFWMD*).

**Discussion**

*Governing Authority*

In order to receive Federal grant assistance, a grantee must comply with all applicable federal laws and regulations, not merely the Stafford Act.[8] Moreover, as the recipient of Federal grant funding, the Grantee's obligations under Federal law, regulations, executive orders, and the terms and conditions of the FEMA-State agreement apply to sub-recipients of that funding as well and flow down to an applicant, thus making an applicant accountable to the Grantee to comply with all Federal grant requirements.[9] In addition to the Stafford Act, the PA program is governed by a myriad of laws, regulations and policies,[10] including OMB Circular A-110. OMB

---

[7] Letter from Attorneys, Ice Miller Legal Counsel, to Pub. Assistance Program Dir., IN Dep't of Homeland Sec., at 11 (Feb. 16, 2017) [hereinafter *Second Appeal Letter*].

[8] *See* Illinois Equal Employment Opportunity Regulations for Public Contracts, B-167015, 54 Comp. Gen. 6 (1974) (holding "[i]t is clear that a grantee receiving Federal funds takes such funds subject to any statutory or regulatory restrictions which may be imposed by the Federal Government. (citations omitted). Therefore, although the Federal Government is not a party to contracts awarded by its grantees, a grantee must comply with conditions attached to the grant in awarding federally assisted contracts.")

[9] *See* 44 C.F.R. § 13.37(a) (2007) (requiring Grantees to ensure that every subgrant includes any clauses required by Federal statute and executive orders and their implementing regulations and that applicants are aware of requirements imposed upon them by Federal statute and regulation).

[10] *See* The Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988, Pub. L. No. 93-288, §§ 316, 321, 325, and 701(a)(1) (mandating adherence to other statutory requirements and authorizing FEMA to implement Stafford Act provisions through Regulation and policies)<sub>A-010</sub>

Circular A-110, as codified at 2 C.F.R. Pt. 215, establishes standard requirements for Federal grants awarded to institutions of higher learning, hospitals, and other non-profit organizations and is applicable to all Federal agencies.[11]

As a non-profit hospital, the Applicant was required to follow the procurement standards found in 2 C.F.R. Pt. 215.[12] While the Applicant argues that its procurement was not governed by 2 C.F.R. Pt. 215, it does not provide any support for this position. Although the primary authority for PA funding is the Stafford Act, FEMA ensures compliance with other laws, including those governing procurement, when obligating Federal funds. Per the FEMA-State Agreement, the Grantee, as the recipient of Federal grant funding, is required to follow all Federal statutory and regulatory requirements, not simply Stafford Act provisions.[13] Pursuant to 2 C.F.R. §§ 215.0(b)(3) and 215.5, the requirements of the FEMA-State Agreement apply to and flow down to the Applicant as the sub-recipient of those funds.[14] Here, the Grantee was required to follow 2 C.F.R. Pt. 215 which consequently applied to the Applicant. In addition, the FEMA-State Agreement provided that "enforcement remedies shall be processed as specified under 44 C.F.R. § 13.43 when the Terms and Conditions… are not met."[15] As such, the Applicant was required to comply with 2 C.F.R. Pt. 215 when procuring labor and equipment to complete disaster-related work in order to receive PA reimbursement.

While the Applicant makes arguments under both 44 C.F.R. Pt. 13 and 2 C.F.R. Pt. 215, it must be noted that, even though the Applicant is a county non-profit hospital, 2 C.F.R. Pt. 215 does not distinguish between non-profit hospitals that are private and those that are governmental units. Although the Applicant argues it is a local governmental unit, and thus, not under the purview of 2 C.F.R. Pt. 215,[16] 44 C.F.R. § 13.4(a)(1) states that 44 C.F.R. Pt. 13 does not apply to state and local hospitals. As such, the applicable authority for evaluating procurement requirements for this Applicant is 2 C.F.R. Pt. 215.[17]

---

[11] OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE PRESIDENT, OMB CIRCULAR A-110, UNIFORM ADMINISTRATIVE REQUIREMENTS FOR GRANTS AND AGREEMENTS WITH INSTITUTIONS OF HIGHER EDUCATION, HOSPITALS, AND OTHER NONPROFIT ORGANIZATIONS (1999) (codified at 2 C.F.R. Pt. 215).

[12] OMB A-110, 2 C.F.R. Pt. 215 applies to PA grants.

[13] FEMA-State Agreement, Exhibit C, Article III (stating, "[t]he Grantee agrees to comply with all applicable laws and regulations, including but not limited to the following law, regulations, and OMB Circulars that govern standard grant management practices and are incorporated into this Agreement by reference: The Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206 (Stafford Act); Title 44 of the Code of Federal Regulations (CFR); OMB Circulars A-21, A-87, A-102, A-110, A-122 and A-133; and 31 CFR § 205.6) (signed June 10, 2008).

[14] *Cf.* 44 C.F.R. § 13.37(a).

[15] FEMA-State Agreement, Exhibit C, Article IV.

[16] *See* 2 C.F.R. §§ 215.0(b)(3), 215.5 (2008).

[17] It is also important to note that many of the requirements found in OMB Circular A-110 also apply to state and local governments under OMB Circular A-102, *Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments,* as codified at 44 C.F.R. Pt. 13.

*Procurement Violations*

   *a.   Mandatory Compliance with 2 C.F.R. Part 215*

Adherence to Federal procurement laws is required to receive grant assistance.[18]   Contrary to what the Applicant asserts, compliance with 2 C.F.R. Pt. 215 is mandatory. In addressing non-compliance, FEMA has discretion to determine appropriate enforcement options on a case-by-case basis.[19]   At times, FEMA may exercise its discretion and award reasonable costs.

   *b.   Cost-Plus-a-Percentage-of-Cost Contracts*

A CPPC contract is a cost reimbursement contract containing some element that obligates the subgrantee to pay the contractor an amount (in the form of either profit or cost), undetermined at the time the contract was made and to be incurred in the future, based on a percentage of future costs.[20]   Unlike other disfavored but allowable contract mechanisms,[21] 2 C.F.R. § 215.44(c) strictly prohibits CPPC contracts.[22]   These contracting instruments are prohibited because they provide a disincentive for contractors to control costs (i.e., the more contractors charge, the more profit they make).[23]

In OIG-14-12-D, the OIG found that the Applicant awarded two CPPC contracts, the McCarthy and Paul Davis contracts, totaling $44,725,020.00. The McCarthy contract was awarded for the Phase 1 rebuilding of the hospital while the Applicant procured the Paul Davis contract for emergency clean-up following the disaster.[24]   The OIG found both contracts were prohibited,[25] but only recommended FEMA deobligate the mark-up costs – $2,232,956.00. FEMA concurred and deobligated the recommended amount.

---

[18] 2 C.F.R. § 215.5.

[19] *See* FEMA Second Appeal Analysis, *City of Springfield*, FEMA-1633-DR-IL, at 4 (Dec. 28, 2012) (concluding that the costs questioned by the OIG represented "a form of CPPC contract, and since CPPC contracts are prohibited…, these costs are ineligible for reimbursement under FEMA's Public Assistance Program."); *see also* FEMA Second Appeal Analysis, *City of Nome*, FEMA-4050-DR-AK, at 6 (Sep. 28, 2016) (determining that the Applicant did not comply with Federal procurement requirements; therefore, costs associated with contract work were not eligible for PA funding).

[20] *See Muschany v. United States*, 324 U.S. 49, 61-62 (1944).

[21] The Applicant states that CPPC contracts are the same contracting mechanism as time-and-material contracts. *See Second Appeal Letter*, at 13. However, the Regulations and FEMA policy distinguish between these two types of contracts—permitting time and material contracts in limited circumstances while strictly prohibiting CPPCs. See 2 C.F.R. § 215.44(c); *see also Public Assistance Guide*, FEMA 322, at 53 (June 2007) [hereinafter *PA Guide*]; *cf.* 44 C.F.R. §§ 13.36(b)(10), (f)(4).

[22] 2 C.F.R. § 215.44(c) (stating "[t]he 'cost-plus-a-percentage-of-cost' or 'percentage of construction cost' methods **shall not** be used") (emphasis added).

[23] U.S. DEP'T OF HOMELAND SEC. OFFICE OF INSPECTOR GEN. (OIG), OIG-14-12-D, FEMA SHOULD RECOVER $10.9 MILLION OF IMPROPER CONTRACTING COSTS FROM GRANT FUNDS AWARDED TO COLUMBUS REGIONAL HOSPITAL, COLUMBUS, INDIANA, at 6 (2013); *cf.* Decision of the Comptroller General, B-119292, 1954 U.S. Comp. Gen. LEXIS 649 (Oct. 8, 1954) ("Section 4(B) of the Armed Services Procurement Act of 1947 prohibits the use of the cost-plus-a-percentage-of-cost system of contracting. The intent of Congress in opposing this system is clearly discernible in the legislative history of this and other acts regulating government procurement. Conditions which it sought to prevent are those which provide an incentive and an opportunity for a contractor or subcontractor to increase his profit by increasing his costs at the expense of the government.").

[24] OIG-14-12-D at 6.

[25] *Id.* at 7.

On second appeal, the Applicant does not contest that the contracts used violated procurement requirements. In fact, the Applicant continually asserts that Federal procurement requirements are "a means to an end,"[26] strict compliance is not necessary, and "any alleged procurement violations are irrelevant and of no moment...."[27] The Applicant also argues the contracts were necessitated by exigent circumstances and the costs were reasonable. The Applicant's arguments are not compelling.

CPPC contracts are strictly prohibited by regulation and nothing in 2 C.F.R. Pt. 215 permits the use of CPPC contracts in exigent circumstances.[28] Nonetheless, exercising its discretionary authority under 2 C.F.R. §§ 215.61 and 215.62, FEMA has at times addressed an Applicant's noncompliance by reducing the award by the "mark-up" of the contracts.[29] Noting such, depending on the circumstances, FEMA could deobligate all funding associated with the contracts. In this instance, the former remedy, which aligns with the OIG recommendation, is appropriate since the concern over CPPC contracts is uncontrolled costs due to the additional percentage accrued for an undefined level of costs. As such, reducing the award by the amount of the additional percentage reduces the likelihood the costs claimed are unreasonable. As explained below, re-obligating the "mark-up" costs on these contracts is not warranted.

### c.   Free and Open Competition

According to 2 C.F.R. § 215.43, an applicant is required to solicit contractors in a manner that provides, to the maximum extent practicable, free and open competition. While not defined in regulation, "free and open competition" generally means that contractors for a project are publicly solicited and all responsible sources are permitted to compete.[30]

The OIG recommended the greatest amount of disallowed funding for the Applicant's failure to allow for free and open competition. The OIG recommended disallowing a total of $8,699,025.00[31] awarded under two contracts—Rollins and Ernst & Young—for non-exigent work because the Applicant used pre-selected contractors when bidding the work, rather than advertising or otherwise publicizing its procurement to other potential qualified bidders. By utilizing a pre-selected list of vendors, the Applicant reduced the likelihood that the most cost-effective contractor was selected.

---

[26] *Second Appeal Letter* at 11.

[27] *Id.* at 25.

[28] Unlike 44 C.F.R. § 13.36(d)(4)(i)(B) which permits non-competitive procurement when the award of a contract is infeasible under a competitive procurement mechanism and "[t]he public exigency or emergency for the requirement will not permit delay resulting from competitive solicitation," no such condition-precedent exists in 2 C.F.R. Pt. 215. In addition, the Regulation defines "procurement by non-competitive proposals" as "procurement through solicitation of a proposal from any one source, or after solicitation of a number of sources, competition is determined inadequate." 44 C.F.R. § 13.36(d)(4).

[29] *See* 2 C.F.R. § 215.4 (permitting the Federal awarding agency to grant exceptions for procurement requirements under 2 C.F.R. Pt. 215 on a case-by-case basis); *PA Guide*, at 53.

[30] OIG-14-12-D at 4; *cf.* 48 C.F.R. § 2.101 (2007) (defining "full and open competition" with respect to a contract action as "all responsible sources are permitted to compete").

[31] Specifically, the OIG recommended disallowing $5,114,305.00 for the Rollins contract which related to building a flood wall (PW 2066), and deobligating $3,584,720.00 of costs awarded under the Ernst & Young contract for administrative work (PWs 1530, 1904, 2013, 2014, 2066, 2073, 2184, 2206, 2210, and 2348).

The OIG further found that the Ernst & Young contract's hourly rates were unreasonably high for administrative services when compared to similar service contracts awarded by the Applicant and guidance provided in Disaster Assistance Policy (DAP) 9525.9, *Section 324 Management Costs and Direct Administrative Costs (DAC)*. Following the OIG audit, Region V conducted a review of the associated PWs and discovered an additional amount from other PWs where funding was reimbursed for DAC incurred by Ernst & Young. The total additional amount deobligated ($956,952.19) was captured in PWs 2373 and 2374.

In both instances of noncompliance with 2 C.F.R. § 215.43, the Applicant does not dispute the OIG's findings nor that its contracts violated Federal regulatory requirements. Instead, it argues that FEMA should award reasonable costs regardless of procurement violations. Again, FEMA's authority to award costs it deems reasonable is distinct from the Applicant's requirements under 2 C.F.R. Pt. 215.

As reflected in PW 2066, the Applicant used a pre-selected list of contractors to install a retaining wall. While Rollins may have been the lowest bidder among the five pre-selected contractors, there is no guarantee that it would have been the lowest had procurement been free and open. Moreover, as the OIG highlighted, the recommended disallowed costs were incurred after the exigent period expired.[32] Therefore, there is no practical reason why free and open competition should not have occurred. The Applicant argues that Region V should have considered the March 3, 2014 cost analysis conducted by FTI Consulting or its own CEF analysis which estimated the project to cost $6,556,121.00 as opposed to deobligating the full amount of the contract. However, by utilizing a preselected list of vendors, the Applicant reduced the likelihood that the most cost-effective contractor was selected. In addition, a CEF is an estimate of the project. Therefore, even though Rollins price was under the CEF, there is no guarantee that a contractor solicited under free and open competition would not have bid lower than both Rollins and the CEF.

Moreover, 2 C.F.R. § 215.45 requires some form of cost or price analysis and documentation in the procurement files in connection with every procurement action—the implication being that the cost/price analysis is done at the time of procurement. As the OIG noted, failure to conduct a cost or price analysis at the time of procurement increases the likelihood of unreasonable contract costs and misinterpretations or errors in pricing relative to the scopes of work.[33] The FTI analysis was completed in March 2014, years after the work was procured. In addition, Region V noted that the FTI analysis did not accurately reflect the prevailing costs for the locality at the time of solicitation. Consequently, Region V properly concluded that the FTI analysis was not as accurate as a cost analysis would have been had it been performed at the time of the procurement or the time that work commenced.

Regarding the Ernst & Young contract, the Applicant contests FEMA's decision to wholly deobligate costs, asserting that the actual costs incurred were reasonable because the contract was procured during the agreed upon exigent period. Typically, FEMA finds exigency when

---

[32] FEMA, the OIG and the Applicant agree the exigency period lasted through April 2009. However, the Rollins contract was entered into on April 20, 2011.

[33] OIG-14-12-D at 8.

A-014

lives or property are at stake or the work is for critical services or not permanent in nature.[34]  In comparison, FEMA awards costs for administrative activities, including identifying damage, attending the Applicant's briefing, establishing files and providing copies and documentation, preparing for audits, working with the State during project monitoring, final inspection, and audits, and assessing damage, collecting costs data and developing cost estimates,[35] and does not view such actions as "critical services" or done in furtherance of saving lives or property.  In this case, while the work may have been procured during the exigency period, it is administrative work and thus not exigent in nature.[36]

In addition, FEMA assesses the reasonableness of rates for administrative services based on complexity of the work or level of technical expertise needed.[37]  For instance, FEMA has previously determined that an hourly rate of $285 for administrative services was unreasonable absent evidence that the management tasks were complex.[38]  In this instance, the Applicant's documentation does not demonstrate that the administrative tasks were complex in nature justifying the rates charged.

Moreover, the scope of the Ernst & Young contract does not comport with 2 C.F.R. § 215.44[39] which compounds the issue of the rates charged for administrative services because the limited scope restricts FEMA's ability to determine whether the rate charged was reasonable for the work claimed.  The Applicant initially received contract proposals related to processing insurance claims, not administrative work.  Even though the Applicant solicited new proposals after FEMA raised concerns about the scope of work, the Applicant's modified solicitation only added the word "FEMA" to the scope.  The Applicant also failed to provide pre-award documentation to determine the proposed scope of services.

As such, that Applicant has not demonstrated that the exigency or technical level of services provided compelled the contractor to charge nor the Applicant to agree to rates between $300 and $550 per hour.  Had the Applicant competitively bid its administrative service contract per 2 C.F.R. § 215.43, the likelihood for potentially excessive rates would decrease.  Consequently, FEMA finds the decision to not award actual costs for the Ernst & Young contract is appropriate.

Alternatively, the Applicant requests FEMA award reasonable costs based on a previous second appeal decision[40] in which FEMA awarded reasonable costs for contracts not procured according to Federal procurement laws.  Specifically, the Applicant requests that FEMA reimburse costs based on the total hours claimed (5,233.06) multiplied by $155.00.  To support the proposed $155.00 figure, the Applicant cites to OIG-14-12-D which says FEMA approved this rate for

---

[34] Second Appeal Analysis, *Martinsville CUSD*, FEMA-1771-DR-IL, at 4 (July 19, 2016).

[35] *Public Assistance Policy Digest*, FEMA 321, at 4 (Jan. 2008).

[36] *See* Second Appeal Analysis, *City of Pierre*, FEMA-1984-DR-SD, at 11 (May 27, 2015) (defining "exigency" as "something that is necessary to a particular situation that requires or demands immediate aid or action").

[37] *See* Memorandum from Assistant Adm'r, FEMA Disaster Assistance Directorate, to Reg'l Adm'rs, FEMA Regions I-X, at 2 (Sep. 8, 2009).  The memorandum stated that a junior or mid-level technical or program specialist is appropriate for most PA projects.)

[38] Second Appeal Analysis, *City of Cedar Rapids*, FEMA-1763-DR-IA, at 11 (May 9, 2014).

[39] 2 C.F.R. § 215.44(a)(3)(i) (stating the scope of the contract must provide "a clear and accurate description of the technical requirements for the material, product or service to be procured").

[40] *Second Appeal Letter* at 29 (citing FEMA Second Appeal Analysis, *Henderson County*, FEMA-1771-DR-IL, (Sep. 20, 2013)).

administrative services that did not require highly technical expertise in a 2013 appeal decision.[41] However, neither the audit report nor the Applicant specify which 2013 appeal decision concluded $155.00 was a reasonable rate. FEMA presumes the Applicant is referencing a *City of Cedar Rapids* second appeal decision.[42] However, as explained in that appeal decision, the $155.00 rate was derived from an extensive cost analysis that applied to that particular disaster. This appeal involves dissimilar facts, a different declared event, a different geographic area, and other distinguishing factors that do not warrant FEMA applying the $155.00 rate in this appeal.

*Enforcement and Reasonable Costs*

Pursuant to 2 C.F.R. §§ 215.61 and 215.62, FEMA may disallow all or part of the cost of the activity or action not in compliance when an applicant materially fails to comply with the terms and conditions of an award. Compliance with Federal procurement requirements is a condition of the grant. Here, there is no question that the Applicant failed to comply with procurement requirements under 2 C.F.R. Pt. 215. As such, FEMA was within its authority to deobligate funding from the grant award.

In the case of procurement violations, FEMA will often use its discretionary authority to independently determine, on a case-by-case basis, whether contract costs are reasonable and fair and, depending on the nature of the violation may balance its desire to assist communities in their recovery with ensuring conditions of the grant are met, reimburse such costs.[43] A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost.[44] However, price is not the only factor considered in determining reasonable costs.[45] When determining whether a cost is reasonable, FEMA considers: (1) whether the cost is of a type generally recognized as ordinary and necessary for the performance of a Federal award; (2) the restraints or requirements imposed by Federal, State and other laws and regulations and conditions of the Federal award; (3) market prices for comparable good or services; (4) whether the individuals concerned acted with prudence in the circumstances given their responsibilities to the governmental units, its employees, the public at large, and the Federal government; and (5) significant deviations from the established practices of the governmental unit which may unjustifiably increase the Federal award's cost.[46] In applying the factors for determining reasonable costs, it is clear that the implicated contracts do not comport with several of them.

A CPPC contract does not comport with the factors considered when determining reasonable costs enumerated in OMB Circular A-87, *Cost Principles for State, Local, and Indian Tribal*

---

[41] OIG-14-12-D at 5.

[42] Second Appeal Analysis, *City of Cedar Rapids*, FEMA-1763-DR-IA (Apr. 22, 2013) (explaining that the Regional Administrator limited DAC rates to $155.00 an hour after FEMA performed an extensive cost analysis for the disaster).

[43] *See* Second Appeal Analysis, *City of Vero Beach*, FEMA-1545/1561-DR-FL, at 4 (Nov. 21, 2016); Second Appeal Analysis, *Nishnabotna Valley Rural Electric Cooperative*, FEMA-1880-DR-IA, at 6 (Nov. 7, 2016); *City of Nome*, FEMA-4050-DR-AK, at 5-6 (Sep. 28, 2016); *and* Second Appeal Analysis, *City of Ft. Lauderdale*, FEMA-1609-DR-FL, at 5-6 (Nov. 25, 2015).

[44] OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE PRESIDENT, OMB CIRCULAR A-87, COST PRINCIPLES FOR STATE, LOCAL, AND INDIAN TRIBAL GOVERNMENTS, ATTACHMENT A, SECTION C.2 (2004).

[45] Second Appeal Analysis, *St. Mary's Academy*, FEMA-1603-DR-FL, at 5 (Aug. 4, 2015).

[46] OMB Circular A-87.

A-016

*Governments.*[47]  As such, FEMA was within its authority to deobligate funding from the grant award.

Regarding the contracts that violate 2 C.F.R. § 215.43, the Applicant's argument that it should be awarded reasonable costs despite the violations is problematic because it wholly disregards the intent behind free and open competition.  The facts demonstrate that the Rollins contract was procured outside of the exigency period, and as such, did not warrant using non-competitive procurement procedures.  In addition, the rates charged by Ernest & Young were well above what other contractors were charging following the disaster as shown through historical data.  As such, beyond the Applicant failing to adhere with the requirements imposed by Federal law, it did not act prudently or reasonably when procuring the questioned contracts.  Accordingly, FEMA Region V acted appropriately when it deobligated funding associated with these procurement violations.  Therefore, no additional costs will be awarded through this second appeal decision.

*Stafford Act § 705(c) Applicability*

Stafford Act § 705(c) provides that a state or local government is not liable for reimbursement or any other penalty for any payment made pursuant to the Stafford Act if the payment was authorized in an approved agreement specifying costs, the costs were reasonable, and the purpose of the grant was accomplished.[48]  FEMA implemented this statutory provision[49] through its Recovery Policy FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures.*[50]

In applying FP-205-081-2 to the facts of the appeal,[51] FEMA finds the prohibitions of § 705(c) do not apply.  The statutory restriction is not applicable when a violation of mandatory Federal procurement requirements occurs because the purpose of the grant is not accomplished in such

---

[47] *See id.* (stipulating the Agency considers requirements imposed by Federal laws and regulations and conditions of the Federal award when determining reasonable costs); *see also PA Guide*, at 40 (stating eligible costs must not only be reasonable, but "compliant with Federal, State, and local requirements for competitive procurement").

[48] Stafford Act § 705(c).

[49] Section 705(c) is not a self-executing statutory provision.

[50] FEMA Recovery Policy FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures*, at 4-7 (Mar. 31, 2016) (interpreting 705(c) requirements as follows: (1) payment occurs when the recipient draws down funds obligated through SmartLink, regardless of whether the recipient has disbursed funds to the subrecipient, (2) the purpose of the grant is accomplished when the SOW is completed and the Applicant has demonstrated compliance with post-award terms, and (3) costs are reasonable if, in their nature and amount, they do not exceed that which would be incurred by a prudent person under similar circumstances).  In the second appeal, the Applicant challenges FEMA's use of FP-205-081-2 in analyzing Section 705(c) as it relates to the facts of this appeal, arguing that it violates Stafford Act § 325(a)(2).  Section 705(c), which restricts FEMA's ability to hold a state or local government liable for reimbursement or any other penalty for any payment made under the Stafford Act that meet the three prongs of the subsection, focuses on the Agency's ability to recover funds that were previously awarded rather than reducing through policy change the availability of assistance to applicants.

[51] FEMA Recovery Policy, FP-205-081-2, *Stafford Act Section 705, Disaster Grant Closeout Procedures* applies to "all open PWs, meaning appeal, arbitration, or dispute resolution rights have not been exhausted and FEMA has not made a final administrative decision (e.g., an adjudicated second appeal, final arbitration decision)." FP-205-081-2, at 2.

A-017

instances.[52] Here, the deobligated amount is associated with costs incurred under CPPC contracts and non-competitive contracts contra to 2 C.F.R. §§ 215.44 and 215.43, respectively. Therefore, due to the regulatory violations, the Applicant's claim does not meet the third prong of Stafford Act § 705(c).

**Conclusion**

By entering into CPPC contracts and using pre-selected bidders, the Applicant failed to comply with Federal procurement requirements and the conditions of the grant award. FEMA Region V took appropriate enforcement action pursuant to 2 C.F.R. §§ 215.61 and 215.62 to address those violations. Finally, Stafford Act § 705(c) does not preclude FEMA from deobligating funding because the purpose of the grant is not accomplished when procurement violations occur.

---

[52] *Id.* at 6 (stating, "[i]f, after the recipient has submitted the appropriate documentation, FEMA determines that the recipient or subrecipient failed to comply with a post-award term or condition of the award (such as federal requirements for procurement, environmental planning and historic preservation compliance, or obtaining and maintaining insurance), the purpose of the grant was not accomplished and FEMA is not prohibited by Section 705(c) from recovering payments as a remedy"); Second Appeal Analysis, *City of Coral Springs*, FEMA-1609-DR-FL, at 8 (May 19, 2017).

A-018